# Richmond

## HOSPITAL OF ST. VINCENT OF PAUL v̇. THOMPSON

### March 12, 1914.

#### Absent, Cardwell, J.

1. CHARITIES—*Premises—Licensee—Invitee.*—One who, upon request of a sick friend, accompanies him to a charity hospital for treatment is an invitee and not a mere licensee, and the hospital owes him the duty to exercise ordinary care to have its premises in a reasonably safe condition for the visit, and if it negligently fails to perform that duty, and, as a proximate consequence thereof, the invitee, while exercising due care, is injured, then the hospital is liable for the injuries sustained.

2. CHARITIES—*Hospital—Pay Patients.*—A hospital which is chartered to care for sick and disabled persons, and which has no capital stock, and is not conducted for dividends and profits, is a charity hospital, and the fact that it receives compensation from patients who are able to pay for the accommodations received, does not render it any the less a charitable institution in the eyes of the law.

3. CHARITIES—*Hospital—Patients—Negligent Injuries—Trust Fund—Doctrine.*—A beneficiary of a charitable association cannot, according to the weight of authority, hold the- association responsible for negligent injuries to him as a patient, but the basis upon which the immunity rests differs widely in the different jurisdictions. For an elaborate discussion of the subject, disapproving the "trust fund" doctrine, and approving the view that the beneficiary by implied contract assumes the risk, see opinion of the court.

4. CHARITIES—*Liability for Torts.*—A charitable corporation is not exempt from liability for torts against strangers because it holds its property in trust to be applied to the purposes of charity.

5. CHARITIES—*Case at Bar.*—The evidence in the case at bar tends to support the averments of the declaration and all the facts

> upon which the several instructions were predicated, and makes a case which was proper for the consideration of the jury, whose verdict, under proper instructions, is conclusive.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Burrow & Spindle* and *James E. Heath,* for the plaintiff in error.

*E. R. F. Wells,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was a suit brought by Mrs. Thompson against the Hospital of St. Vincent of Paul, in the city of Norfolk, to recover damages for an injury alleged to have resulted from the negligence of the defendant. There was a verdict and judgment in favor of the plaintiff for $2,500 to which a writ of error was awarded.

Three errors are assigned to the rulings of the trial court: First, the action of the court in overruling the demurrer to the declaration; second, its refusal to give certain instructions asked for by plaintiff in error, and the giving of certain instructions asked for by defendant in error; and, third, its refusal to set aside the verdict and entering judgment thereon.

There are several grounds of demurrer assigned, which present no question of novelty or importance and the underlying principles of which will be sufficiently discussed in the succeeding part of this opinion. Suf-

fice it now to say that the declaration, in our judgment, states a cause of action, and the demurrer was, therefore, properly overruled.

It is assigned as error that the court refused instructions 1 and 3, asked for by the plaintiff in error, and gave instruction 4, asked for by the defendant in error.

Instruction No. 1, asked for by plaintiff in error and refused by the court, declares that a hospital which is incorporated for taking care of sick and disabled persons who may be received by it, which has no capital stock, and is not conducted for dividends or profits, is a charitable institution; and if the jury believe from the evidence that the defendant is a charitable institution according to this definition, it cannot be held liable for the plaintiff's injury merely because its employees' negligence may have caused said injury, but that, before they can bring in a verdict for the plaintiff, they must further find that the defendant was guilty of negligence in selecting said employees.

The third instruction asked for by the plaintiff in error and refused tells the jury that "if they believe from the evidence that the plaintiff in this case came upon the premises of the defendant on the thirty-first day of July, 1912, at the time of the injury complained of, without an invitation, either express or implied, from the said defendant, then the said plaintiff was a mere licensee, and the said defendant was liable to her, if injured upon said premises, for wanton injury only, and they must find for the defendant, unless they further believe that the said plaintiff was wantonly injured while on the premises of the said defendant."

Taking up these instructions in their inverse order and dealing first with the principle announced in the third instruction, we are of opinion that it was rightly rejected. It appears from the declaration and from the

proof—indeed, all of the evidence tends to establish—that the defendant in error was an invitee and not a mere licensee, to whom the plaintiff in error owed the duty of reasonable care. The law is correctly and we think sufficiently stated upon this branch of the case in instruction No. 2 given at the instance of defendant in error, as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff on July 31, 1912, accompanied at her request a sick friend to the defendant's hospital for treatment; that the condition of her friend was such as to render it reasonably necessary for the plaintiff, or some one else, to accompany her —then the defendant owed to the plaintiff the duty to exercise ordinary care to have its premises in reasonably safe condition for the visit; and if the defendant negligently failed to perform that duty, and as the proximate consequence thereof the plaintiff while exercising due care was injured, then the defendant is liable for the injuries sustained."

There is no dispute as to the facts on which this instruction is predicated, and the facts being ascertained, it was the duty of the court to tell the jury the law which applied to them; and this, as we have said, is correctly done in defendant in error's instruction No. 2.

Instruction No. 1 asked for by plaintiff in error presents a question of great interest. It must be conceded that the plaintiff in error is a charitable institution. That it receives compensation from patients who are able to pay for the accommodations received does not render it any the less a charitable institution in the eye of the law. This seems to be well established by the authorities. *McDonald* v. *Mass. Gen'l. Hospital,* 120 Mass 432, 21 Am. St. Rep. 529; *Galvin* v. *Rhode Island Hospital,* 12 R. I. 411, 34 Am. Rep. 675.

It may also be conceded that by the weight of author-
ity a beneficiary of the charity cannot hold the associa-
tion responsible for negligent injuries, but the basis
upon which the immunity is made to rest differs widely
in the adjudicated cases.  This court has never hereto-
fore been called upon to consider this subject.

In *Trevett* v. *Prison Association,* 98 Va. 332, 36 S. E.
373, 50 L. R. A. 564, 81 Am. St. Rep. 727, Trevett who
was a stranger to the association obtained an injunction
against it for polluting a stream which passed through
his premises, upon the ground that it had created a
nuisance.  The association undertook to maintain that
it was a public corporation, and relied upon the author-
ity of *Maia's Admr.* v. *Eastern State Hospital,* 97 Va.
507, 34 S. E. 617, 47 L. R. A. 577, a corporation which
was held to be purely of a governmental character and
under the exclusive ownership and control of the State,
and was, therefore, not liable in damages for the negli-
gent acts of its servants.  It was held that the Prison
Association could not plead immunity upon this ground;
that it was not a public corporation, and though of a
benevolent character was responsible for its torts.

The subject has, however, been considered and treated
with great learning and ability by numerous courts.

In *Duncan* v. *Nebraska Sanitarium,* 137 N. W. 1120,
41 L. R. A. (N. S.) 973, the Supreme Court of Nebraska
held that a charitable institution conducting a hospital
solely for philanthropic and benevolent purposes is not
liable to inmates for the negligence of nurses; that a
charitable hospital does not, by accepting compensation
from a patient who is able to pay for room, board, and
care, incur liability to such patient for the negligence of
nurses.  It will be observed that in this case the hospital
accepted compensation from a patient who was able to
pay, and notwithstanding this fact the court charged

the jury, that "The undisputed evidence further shows that the defendant is a charitable institution maintained for philanthropic and charitable and benevolent purposes, and in no manner directly or indirectly for private profit or dividend-paying to any one;'' and the appellate court held that this instruction was fully justified by the evidence and was properly given. In the course of its opinion the court said: "It is a well established doctrine that a charitable institution conducting a hospital solely for philanthropic and benevolent purposes is not liable to inmates for the negligence of nurses. Some courts say that one accepting the benefits of such a charity exempts his benefactor from liability for the negligent acts of servants. Others assert that nonliability is based on the ground that trust funds created for benevolent purposes should not be diverted therefrom to pay damages arising from the torts of servants. Exemption from liability is frequently sanctioned on the ground that public policy encourages the support and maintenance of charitable institutions and protects their funds from the maw of litigation. While there is a diversity of opinion as to the reasons for the rule, the doctrine itself is firmly established.''

The appellate court said further in its opinion, that even though full compensation had been paid in the particular case by the plaintiff it would not necessarily follow that the patient received no benefit from charity. "She occupied a room in a building maintained in part at least by donated funds intended for benevolent purposes. Necessary care, skill and food came from the same source. On the record as made the jury should not have been permitted to find that the inmate had received no benefit from charity.'' For these propositions a great number of authorities are cited, which fully war-

rant the statement that we have made, that the fact that. compensation was paid in the case before us does not alter the fact that the association was a benevolent institution.

While it may not be necessary in this case for us to decide, we have little hesitation in saying that what is known as the trust fund doctrine does not appeal to us as a satisfactory footing upon which to rest the immunity of such associations. The trust fund doctrine would establish absolute immunity, if carried to its logical conclusion, for all torts committed by such associations. It would apply to the omission to perform, or the negligent performance of nonassignable duties, and indeed to negligence in all its conceivable forms. The immunity flowing from the acceptance of the benefits of such a charity, as held by decisions of many courts rests upon a more logical foundation, and has met with approval of many courts of high standing and the trend of modern decision seems to be in that direction.

In *Basabo* v. *Salvation Army,* 35 R. I. 22, 85 Atl. 120, 42 L. R. A. (N. S.) 1144, (Supreme Court of Rhode Island), the subject was examined with the utmost care and a vast number of authorities cited and considered. It discusses every phase of the case and every ground of exemption from liability that has been suggested. In the course of the opinion Judge Parkhurst observes: "Some of the cases cited absolutely deny the liability of a charitable corporation in any event to pay damages for injuries arising from the negligence of its servants or agents, either to a patient or inmate, or to a third party, on the ground of public policy, saying that "it would be against all law and all equity to take those trust funds, so contributed for a special charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agents or servants of the charity, and

arguing that if such damages were to be allowed to be paid out of the trust funds it would tend to destroy the charity, and to discourage the giving of money or other property for the establishment of charities. (Citing a number of authorities.) Other cases cited, while arguing along the same general lines of public policy, limit the exemption of charitable corporations from liability for injuries occasioned by the negligence of physicians, surgeons, nurses, servants and agents to cases where there has been no negligence on the part of the defendants in the selection or retention of such persons. (Again citing authorities.) We think these latter cases must be regarded as entirely inconsistent with the general proposition of the exemption of charitable corporations on grounds of public policy, set forth in the previous cases, as was said in reference to many of these cases by Gaynor, J., in *Kellogg* v. *Church Charity Foundation,* 128 App. Div. 214, at page 217, 112 N. Y. Supp. 566, at page 569: 'In many, if not most, of the cases, a ground for the nonliability for the torts of agents or servants of charitable institutions is that to pay damages for such torts would be a diversion of their funds from the trust purposes for which they are donated by the charitable, and thus a contravention of the trust; and that as such institutions have no other funds, it would be futile to allow judgments to be taken against them in such cases. But the opinion of the judges in these same cases almost invariably except cases where the agent or servant was incompetent and there was negligence in his selection, failing to take note that it would be as much a diversion of the trust funds to pay damages for the tort of negligence in selection as for any other tort. If the rule exist, it must necessarily apply to all torts and in all cases. The only support for the argument that it does exist is found in the remarks

of judges in certain rather old English cases, and never had a direct application to actions of tort against charitable corporations such as are now common.' "

Referring to *Powers* v. *Massachusetts Homeopathic Hospital,* 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372, Judge Parkhurst says: "After a very careful review of the authorities up to the date of decision (1901), the United States Circuit Court of Appeals repudiated the doctrine of general exemption on the ground of public policy, and placed the exemption of the defendant in the case at bar, where it was sued for negligence of a nurse by a patient injured, upon the ground that 'one who accepts the benefit either of a public or a private charity enters into a relation which exempts his bene-factor from liability for the negligence of his servants in administering the charity; at any rate, if the bene-factor has used due care in selecting those servants . . . If, in their dealings with their property appro-priated to charity, they (charitable institutions) create a nuisance by themselves or by their servants, if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but, if a suffering man avails himself of their charity, he takes the risks of mal-practice, if their charitable agents have been carefully selected.' "

In *Hearnes* v. *Waterbury Hospital,* 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224, the same doctrine was main-tained; and in *Downes* v. *Harper Hospital,* 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427, it is said: "It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage to an innocent beneficiary.

Those voluntarily accepting the benefit of the charity accept it upon this condition.''

*Basaba* v. *Salvation Army, supra,* and the authorities there cited seem to go far to establish that with respect to the physicians, surgeons and nurses, and other skilled attendants such as are furnished the patients, not being under the control of the corporation as to their treatment are not to be considered as the servants of the corporation in such sense as to make it responsible under the doctrine of *respondeat superior,* provided they are selected with due care, and upon this principle many of the cases relating to immunity of benevolent corporations may be logically and properly rested. Secondly, that there are certain duties to patients which are corporate duties such as the exercise of due care in the selection of skilled and competent attendants and the exercise of due care in the summoning of such attendants in a case where the condition of the patient requires such service, and that the agent of the corporation, whose duty it is to summon such attendants, is in such case the agent and representative of the corporation, whose negligence is deemed to be that of the corporation itself. Thirdly, that the doctrine of the general immunity of a charitable corporation from liability for damages, on the ground of public policy, as involving the diversion of trust funds from the purposes of the trust, has no logical foundation, and that, where such a corporation has funds available for the general purposes of the corporation, it may apply such funds to pay damages for which it is held liable notwithstanding the trusts for which they are held, because the liability is incurred in carrying out the trusts and is incident to them.

The case of *Basabo* v. *Salvation Army, supra,* then goes on to deal with the negligence of servants or agents

of benevolent institutions resulting in injuries to third persons who are not in the relation of inmates, patients, or beneficiaries. The case of *Fire Ins. Patrol* v. *Boyd,* 120 Pa. 624, 15 Atl. 553, 1 L. R. A. 417, 6 Am. St. Rep. 745, is said to stand almost alone in declaring immunity to a benevolent corporation for injuries inflicted upon a stranger.

In *Hewett* v. *Woman's Hospital Aid Asso.*, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 476, a nurse in the employment of the defendant, a charitable corporation, who was receiving wages and instruction in consideration of her services as such nurse, was placed by the superintendent in charge of a patient suffering from diphtheria, of which the superintendent had notice, but neglected to give notice to the nurse. The nurse, not knowing the nature of the case, took the disease, and, for the injury to her caused thereby, brought suit. She was held entitled to recover. Exemption from liability was claimed by the defendant on the same grounds of exemption as set forth in many of the cases above cited. After examining the statutes of New Hampshire under which the defendant was incorporated, and finding therein no express exemption from liability, the court proceeds to a careful examination of the cases holding such corporations exempt · from liability on general grounds of public policy, and the court finds from the evidence that the plaintiff was a servant or employee of the defendant corporation. In stating its conclusions upon this branch of the case, the court says as follows: "If she had been employed by an individual to attend a member of his family afflicted with smallpox, of which he had knowledge, but of which he did not inform her, and she took the disease without fault on her part, and suffered damage therefrom, it would not be seriously denied that he was guilty of actionable negligence in not

informing her of the danger to which he exposed her. It was his duty, arising from his employment of her, or from the contractual relation of master and servant existing between them, to warn her of the danger incident to the service which he knew, or under the circumstances ought to have known, and of which he knew she was ignorant, though in the exercise of ordinary care. And this duty is a non-delegable one. . . . To say that a similar duty was not imposed upon the defendant for the benefit and protection of the plaintiff, because it is a charitable corporation, is to relieve such corporations from the reasonable obligation of exercising the care ordinarily required of, or contractually assumed by, men in general in the prosecution of their legitimate business. The necessity for such an exceptional holding is not apparent. Since the property of the defendant is held for the general purpose of maintaining a hospital, without other specific limitation, it is no more exempt from being appropriated to the payment of damages occasioned by the negligence of the hospital than is the property of an individual, which he holds for commercial or charitable purposes, for the consequences of his negligence."

In *Bruce* v. *Central M. E. Church*, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, the court found that the defendant was a charitable corporation, and proceeded to examine the doctrine of the exemption of such charitable corporations from liability for negligence. In this case plaintiff was an employee of a contractor engaged in decorating the church building, and sued for injuries sustained by reason of the breaking of defective scaffolding furnished by the agents of the defendant. The majority opinion, after setting forth the reasons for holding the defendant to be a charitable corporation, proceeds to the examination of the case of *Downes*

v. *Harper Hospital,* 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427, where some of the language used was consistent with the doctrine of general exemption on grounds of public policy, and says as follows: ''I conclude, therefore, that we cannot hold the principle of the decision in *Downes* v. *Harper Hospital, supra,* inapplicable, upon the ground that the funds of the church are not charitable trust funds. This leads us to the inquiry, Is there any other ground upon which we should hold *Downes* v. *Harper Hospital* inapplicable? There is this distinction between *Downes* v. *Harper Hospital* and this case, viz., in the *Downes Case* plaintiff was a patient in defendant's hospital, and therefore a beneficiary of the charitable trust administered by the hospital corporation, while in this case he was an employee of the defendant's contractor, and not a beneficiary of the trust administered by defendant. If we hold that the principle of the *Downes Case* applies to the case at bar, we must declare that that principle exempts a corporation administering a charitable trust from all liability for the torts of its agents, and, as a corporation can act only by and through its agents, that it is exempt from all liability whatsoever for torts. What is the principle underlying the *Downes Case?* Does it exempt a corporation administering a charitable trust from all liability for torts? Those who answer this question in the affirmative cannot support their position by appealing to the reasoning of the opinion in that case. While that opinion says, 'The law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution,' the pith of its reasoning, in my judgment, is contained in the following words: 'It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or

their employees, though such acts result in damages to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition.' " And, after referring to a large number of cases, the Michigan court, in *Bruce* v. *Church,* said: "In the latest of these cases (*Powers* v. *Homeopathic Hospital*), the opinion is exhaustive and elaborate, and discusses nearly all the authorities. It is held that the ground upon which liability is denied is that of assumed risk; the court saying: 'One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting these servants.' "

Coming to deal with exemption upon the ground of public policy, in *Basabo* v. *Salvation Army, supra,* quoting from *Powers* v. *Homeopathic Hospital, supra,* it is said, that such exemption must rest upon the argument that the advantages reaped by the public from such trusts justify the exemption; that is, as applied to this case, the advantages to the public justify defendant's exemption from liability for wrongs done to individuals. If this argument is sound—and its soundness may be questioned, for there are those who will deny that the advantages to the public justify the wrong to the individual— it should be addressed to the legislative, and not to the judicial, department of the government. It is our duty as judges to apply the law. We have no authority to create exemptions or to declare immunity."

In 147 Mich. at page 245, 110 N. W. at page 954 (10 L. R. A. (N. S.) 74, 11 Am. Cas. 150.) the opinion says: "I conclude from this reasoning that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and

cannot therefore claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort, and that *Downes* v. *Harper Hospital, supra,* and other similar cases are consistent with this rule. They rest upon the principle, correctly stated in *Powers* v. *Massachusetts Homeopathic Hospital,* 65 L. R. A. 372, that the beneficiary of such charitable trust enters into a contract whereby he assumes the risk of such torts. It is not surprising that years have elapsed before the correct legal principle governing these cases was announced in *Powers* v. *Massachusetts Homeopathic Hospital.* The discovery of correct legal principles, like the discovery of scientific and social truths, requires time and patient investigation.''

In *Hordern* v. *Salvation Army,* 199 N. Y. 233, 92 N. E. 626, 32 L. R. A. (N. S.) 62, 139 Am. St. Rep. 889, the action was brought to recover for personal injuries sustained by the plaintiff, a journeyman mechanic, who was engaged in making repairs upon a boiler upon defendant's premises, through the defective condition of a runway or staging leading from a door in the boiler room. The defendant claimed exemption from liability as being a religious or charitable corporation. The court cites many of the cases above referred to where such corporations have been held to be totally immune from liability, as well as those where they have been held immune on the ground that they were performing governmental functions, and also those where the immunity is made dependent upon the relation the plaintiff bears to the defendant, and says: ''In all it is recognized that the beneficiary of a charitable trust may not hold the corporation liable for the neglect of its servants. This is unquestionably the law of this State.'' (Citing cases.) And, after discussing certain other cases in New York,

where defendant charitable corporations have been held liable to third persons for negligence, repudiates the doctrine of the nonliability of trust funds for payment of damages arising from negligence.

*Hordern* v. *Salvation Army, supra,* fully approves the doctrine of *Powers* v. *Homeopathic Hospital, supra,* and the court said "We can add nothing to the force of this reasoning, but simply express our concurrence therein, as well as in the argument of Judge Lowell." *Hordern* v. *Salvation Army, supra,* itself was subsequently approved by the New York Court of Appeals in *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, where the court says: "It must now be regarded as settled that a charitable corporation is not exempt from liability for a tort against a stranger because of the fact that it holds its property in trust to be applied to the purposes of charity."

We are much indebted, in considering this case, to the very learned and able opinion of the Rhode Island court in *Bascabo* v. *Salvation Army, supra,* from which we have extracted with great freedom.

Applying the principles considered to the case before us, it becomes at once apparent that the defendant in error was not a beneficiary of the charity, but that she is to be considered as a stranger, and comes within the influence of the principle, that a charitable corporation is not exempt from liability for torts against strangers because it holds its property in trust to be applied to the purposes of charity; a principle which seems to be fully established by courts of the highest authority and in well considered cases.

In this connection it may be observed, that much that has been said in this opinion was, in this view of the case, unnecessary; to which we reply, that the whole subject was discussed in oral argument and in the briefs

of counsel; that it is of great interest and of first impression in this State; and we felt, therefore, that it would be well to consider it in all its bearings.

Our conclusion is that there was no error in the instructions given or refused.

Coming to the facts of the case, we find from the evidence that they are fairly stated in the brief for defendant in error as follows: that Mrs. Davis was expecting to be confined, and her husband had made arrangements with the hospital to receive her as a pay patient. On the day in question Mr. Davis was out of the city, but before leaving had requested Mrs. Thompson, a friend of his wife, to look out for her, and to go to the hospital with her if necessary to go before his return to the city. About noon on July 31, 1912, Mrs. Thompson received a 'phone message from Mrs. Davis, telling her that she felt ill, and that she was preparing to go to the hospital, and asking her to come down and go with her. Mrs. Thompson complied with this request, and went to the apartment occupied by Mrs. Davis. She 'phoned to Mrs. Davis' physician, and he told her to order a carriage and proceed with Mrs. Davis to St Vincent's Hospital. Mrs. Thompson ordered a carriage, and in the meantime Mrs. Davis 'phoned to St. Vincent's Hospital and advised the authorities that she would come over in a short time, and asked them if they were prepared for her. She was informed that the hospital authorities were in waiting and in readiness for her arrival. About half past one o'clock in the afternoon Mrs. Davis and her friend Mrs. Thompson went in the carriage to St. Vincent's Hospital. Before they arrived a storm came up and it began to rain rapidly. The driver, who was familiar with the hospital and its entrances, drove around to the rear of the hospital into an open court, and stopped his carriage at the entrance which was used by the hospital for its

patients and friends accompanying them. Mrs. Davis was at the time suffering a great deal. At her request the driver got down from his seat, and rang the bell at the entrance, and then got back on his seat on the carriage. No one having responded to the summons, Mrs. Thompson suggested that she should get out of the carriage so that there would be no delay when the nurse came. This she did, and, as it was raining very hard at that time, she approached the entrance for the purpose of going inside of the hospital, and thereby protecting herself from the rain until the nurse came. She walked up to the entrance, which was equipped with double screen doors, and opening the door to the left, she stepped into what she thought was a hall or reception room, but instead of that it was an elevator shaft, and she fell to the bottom of the shaft, a distance of four feet seven inches, and sustained the injuries for which she later on instituted this action.

Coming to a more particular description of the elevator, it appears that one side of the elevator shaft was an outside rear wall of the building. At the level of the ground a door-way was cut into this shaft, so that when the floor of the elevator was on a level with the surface of the ground, people could walk in and out of the elevator. This door-way was fitted up as an entrance. There was a stone door sill at the bottom, and at the top of the door-way there was a stone lintel. There were two wooden doors which opened outwardly, and were fastened back during the summer. There were also two screen doors which opened outwardly and which were in use in the summer months. One of these screen doors, the one to the left of a person approaching the entrance, was equipped with a handle, so that it could be opened from the outside, but there was no inside fastening on this door at all, and when the elevator was further up in the

shaft there was nothing to prevent any one from open-
ing these doors and walking into the shaft.   The lower
part of these screen doors was covered with a grating
which prevented a person approaching from seeing
through it into the shaft beyond.   On the left hand side
of the screen doors there was a push bell, just as at any
ordinary entrance door, and there was a little inclined
wooden way leading up to the sill of the door.   In other
words, the testimony seems to show that this entrance
was equipped just as any ordinary entrance into a hall
or reception room is equipped.   There were no signs or
warnings of any kind to indicate that these doors opened
into an elevator shaft instead of into a hall.

We think the evidence tends to support all the aver-
ments of the declaration and all the facts upon which the
several instructions were predicated, and makes a case
which was proper for the consideration of the jury,
whose verdict under proper instructions is conclusive.

We are therefore of opinion that the trial court com-
mitted no error, and its judgment is affirmed.

*Affirmed.*