# Richmond

THALHIMER BROTHERS, INCORPORATED V. CARRIE CASCI.

March 16, 1933.

Present, All the Justices.

The opinion states the case.

*George E. Haw* and *R. E. Cabell,* for the plaintiff in error.

*John B. Lightfoot, Jr.,* and *James A. Blake,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Using the designations, plaintiff and defendant, as used in the court below, it appears that the defendant is a cor-

poration, and operates a department store on Broad street, in the city of Richmond. To it the plaintiff, on Easter Saturday, April 5, 1930, went shopping. While there she fell and was hurt. An action for damages was afterwards brought. There was a verdict, confirmed by the trial court, in the sum of $7,500. That judgment is now before us on a writ of error.

Plaintiff, with her niece and young daughter, went into the basement department of the store, and first into its western part, that they might try on some garments which seemed to please them. This they did in small dressing rooms along an aisle by the west wall, cut off from the room itself by packing cases.

Afterwards they came back into the main room and into the cloak department. Mrs. Casci then asked Miss Parrish, an employee, about the location of a toilet. Miss Parrish said that she told her there was one on the next floor, maintained for customers, but that the one in the basement was for employees only. Mrs. Casci's statement is that she was told nothing about the character of the toilets on the different floors, and of course we must accept her testimony as to this.

This is her account of the situation and its incidents so far: "Well, we went down in the basement. We came in from the Broad street side and came down the steps, went over to the suit department and tried on suits, but they didn't like them. So we went over and looked at the coats and while I was up there I asked Miss Parrish was it a ladies' toilet on that floor and she told me I could go over that way (indicating) and the girl over there would show me where to go. So I went over there and asked the girl about the ladies' toilet and she told me it was one on the next floor and a girl in the back of me—I don't know who she was—said: 'I don't see why she couldn't go where other people go back there.' So this young lady directed me to go back to where was the sign 'Basement' and turn to my left. So I went back and turned to my left and opened the

door and I stepped in and when I stepped in of course I was gone. I didn't have nothing to stand on and I went right down."

Notwithstanding this conflict between testimony of Miss Parrish and Mrs. Casci, it is plain from the plaintiff's own statement that she was directed to a place not primarily intended for customers.

Next to be described is the place towards which she went. Along the east wall and near its center is an alcove office, projecting into the room. To its north is an aisle twenty-two or twenty-three inches wide, where employees were accustomed to hang their coats and hats, and in which rubbish was sometimes temporarily placed. It is separated from the room itself by packing cases with boards on their tops, reaching nearly to the ceiling. To the south and separated from the north aisle by the alcove office is another aisle which also runs along the east wall and which is also cut off from the main room somewhat as is the north aisle. It is about three feet wide. Opening into it from the wall are three toilets, one marked "White Women," one "Colored Women" and one "Colored Men"—this in conformity with the statute, Code, section 1822. About flush with the alcove office to the north and between packing cases is the entrance to the north aisle and from five to eight feet north of it is a door in the wall which opens towards the office and which gives access to a ventilator shaft into which the plaintiff fell. These two entrances to these aisles are about fifteen feet apart, and the south entrance is from seven to nine feet from the south side of the alcove office.

To the right of the alcove office as we face east was a sign, "Basement Drapery Department," but plaintiff said that from where she stood she could only see a part of the word "Basement." Whether that sign was against the packing cases which made up the west wall of the south aisle or against the wall itself, is not entirely clear. Plaintiff said that it was "right up against the wall," but the

wall itself was in a large measure shut off by packing cases which made up the south aisle's west wall. There is also some confusion in the evidence as to the character of the entrances to these two aisles, but this is of small moment since plaintiff never saw the south entrance. It is somewhat wider than that to the north.

The eastern floor of this basement room is about two steps above the level of its western part. Plaintiff, when directions were first given her, stood at the foot of these steps. Their center is slightly north of the north wall of the alcove office and about 100 feet away. When asked if she went to the sign "Basement," she answered that she went towards it; that she walked "straight on back." If she did this, she never reached that sign at all but went directly to the entrance to the north aisle and six to eight feet north of the north end of the sign. The aisle into which she turned, as we have seen, is quite narrow, so narrow that she had to pass the door before she undertook to open it. The door itself is flush with the wall and unmarked, is mahogany finished and has a glass door knob. Quarters were so cramped that before she could be moved it was necessary to take the door from its hinges. When opened the pit was dark and into it she stepped and fell.

She was asked why she failed to take any precaution. Her answer was: "I didn't think anything. I just opened the door and before I could catch myself nor anything this foot was gone in." Manifestly she was in a hurry. She was asked if she was excited, and answered: "I suppose so." It thus appears from her own testimony that she did not go to the "Basement" or to the "Basement Drapery" sign, or to any entrance by it, and if this sign was hanging where she said it was hanging, she went nowhere near it. She was told to go to the "Basement" sign and turn to her left, and instead of doing so merely went straight back and turned to her left. The entrance to which she was directed and the aisle into which it opened are both to the south of the office and to her right as she faced east. To go straight

back from where she stood she must have walked down an aisle which led to the north entrance, from which, as we have seen, she turned to her left. In other words, she did not go where she was told to go. In any event, the slightest attention to her surroundings would have been sufficient to have put her on notice had she not been excited. She found herself in an aisle only twenty-two or twenty-three inches wide, and not wide enough to permit the door opening into it to be fully opened—the door was wider than the aisle. When it was open it opened into darkness. By her own statement she did not even undertake to look, but thoughtlessly stepped into an open pit.

In *Hospital of St. Vincent of Paul* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025, it was said that the conditions at and surrounding a door in themselves constituted an invitation to enter. By the same token here they should have put her on guard.

This case, like most cases, decides itself when the facts have been sifted out. Plaintiff knew that she was being directed to a place where customers were not sent except in emergencies. But whether she knew this or not, she did not go where she was told to go, but into a place which was not a public part of this store room. Manifestly she was not an invitee if she went where she was not invited, and she was not a licensee if she went where she had no license to go. The utmost that we can say is that she was but a bare licensee—perhaps it would be more accurate to say that she was an unwitting trespasser. To the storeroom generally she was an invitee, but she was by no implication invited to go into that part of it not intended for use by customers, nor did she, as a matter of fact, go there in any such capacity.

A trespasser or bare licensee takes the situation as she finds it. The duty to each is the same. No prevision is required. Of course no wanton or wilful injury can be inflicted. Beyond this she must depend upon herself.

"So also with respect to a bare licensee (that is to say

one who is permitted by the passive acquiescence of the owner to come on his premises for his own convenience). 'He takes upon himself all the ordinary risks attached to the place and the business carried on there.' The owner must not intentionally or wilfully injure him, but he owes him the active duty of protection only after he knows of his danger, or might have known of it and avoided it by the use of ordinary care. These principles have been repeatedly announced by this court and are conclusive of the case." *Lunsford's Adm'r* v. *Colonial Coal & Coke Co.*, 115 Va. 346, 79 S. E. 348, 349.

"The general rule is that a landowner does not owe to a trespasser (and the same is true of a bare licensee) the duty of having his land in a safe condition for a trespasser to enter upon. The latter has ordinarily no remedy for harm happening to him from the nature of the property upon which he intrudes, and he takes upon himself the risks of the condition of the land, and to recover for an injury happening to him he must show that it was wantonly inflicted, or that the owner or occupant being present could have prevented the injury by the exercise of ordinary care after discovering the danger." *Walker* v. *Potomac, etc., R. Co.*, 105 Va. 226, 53 S. E. 113, 4 L. R. A. (N. S.) 80, 115 Am. St. Rep. 871, 8 Ann. Cas. 862.

Other cases to the same effect might be cited. They but paraphrase each other. Those to which we have adverted state the settled law of Virginia.

Conflicts in testimony are usually for the jury, but this is not always true. When a plaintiff has testified to facts within his knowledge upon which his case turns he must abide by his statements. He cannot rest his recovery upon the evidence of others. He cannot ask a jury to believe that his account of the transaction is not to be relied upon. *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652; *Davis Bakery* v. *Dozier*, 139 Va. 628, 640, 124 S. E. 411; *Bassett & Co.* v. *Wood*, 146 Va. 654, 660, 132 S. E.

700; *Maryland Casualty Co.* v. *Cole,* 156 Va. 707, 158 S. E. 873.

Tested by her own statements, Mrs. Casci did not go where she was told to go. This at the time she doubtless did not realize, for, as we have seen, she was hurried and excited.

We have been referred to a number of Virginia cases but they give us little help.

In *Eastern Shore, etc., Agricultural Ass'n* v. *LeCato,* 151 Va. 614, 144 S. E. 713, it appears that an invitee, who went upon fairgrounds after looking at exhibits, sat upon a broken seat and was hurt. It was as an invitee that he recovered.

In *Norfolk* v. *Anthony,* 117 Va. 777, 86 S. E. 68, it appears that the plaintiff went into the city market house, and was hurt as she went out by catching her foot in some defect in the floor. She was also an invitee.

In *Hospital of St. Vincent of Paul* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025, plaintiff took with her to the hospital a friend as a prospective patient. It was raining and they drove to the rear of that building and to the proper place in compliance with an implied invitation. There were two doors near each other, one of which led into an elevator shaft, and into it the plaintiff stepped and fell. The court said that this door was so equipped as to present all the appearances of a door to an ordinary hall or reception room. It thus appears that plaintiff was where she was invited to come, and was misled by the physical appearances at the door, which in themselves amounted to an invitation. Cases of this general character are of little aid where an invitation is neither given nor implied.

In the instant case there was no primary negligence for there was no breach of duty, and so there is no occasion to rely upon contributory negligence although it is in fact shown. As we have already said, when Mrs. Casci went into this narrow north aisle she found the situation so unusual as to require of her some caution. Plainly the place

was not one intended for public use. There was no sign upon the door to indicate that it led to a toilet. The statute itself requires such a sign. The door had to be passed before it could be opened, and she stepped into a dark pit without thinking and without looking.

In *Clark* v. *Fehlhaber,* 106 Va. 803, 56 S. E. 817, 818, 13 L. R. A. (N. S.) 442, the court took the case on a demurrer to the declaration, and, as such, held that the plaintiff came upon the premises by implied invitation, and that it was the defendant's duty to exercise ordinary care to have them in a reasonably safe condition. Plaintiff entered an open vestibule or hallway into which several doors opened. She knocked at one of them and was told to come in. That door she opened, stepped in and fell headlong down a flight of steps. Recovery was denied. The court said that the plaintiff also was required to use ordinary care. It cited with approval *Hilsenbeck* v. *Guhring,* 131 N. Y. 674, 30 N. E. 580. There plaintiff, who was a guest, went from the upper floor of defendant's dwelling to make use of a water-closet on a floor below. " 'The stairs terminated in a hall, in which the water-closet was located. The hall at the time was dark, receiving no other light than came from a window over the street door; and, as the day was dark, this was insufficient to clear the darkness from the hall. There were three doors in the hall—one leading into the saloon, the next to the basement, and the third to the water-closet.' The basement door was partially open, and the plaintiff, supposing that to be the door of the water-closet, passed through it and fell down the stairs into the basement below, breaking his leg. A gas jet was maintained in the hall, but was not at the time lighted. All the judges present concurred in the opinion that there could be no recovery."

See also *Baker* v. *Butterworth,* 119 Va. 402, 89 S. E. 849, L. R. A. 1916F, 1287; *Pettyjohn & Sons* v. *Basham,* 126 Va. 72, 100 S. E. 813, 38 A. L. R. 391, and *Ryerson* v. *Bathgate,* 67 N. J. Law 337, 51 Atl. 708, 57 L. R. A. 307.

We have not undertaken to discuss the weight which should be given to jury verdicts and to judgments of confirmation. Of course, it has been remembered. Nor have we deemed it necessary to discuss objections to instructions given. Since the evidence does not sustain a recovery other assignments are unimportant.

The judgment appealed from must be reversed, the verdict set aside, and final judgment will be entered here in favor of the defendant.

*Reversed.*