Margaret Pickford **EGERTON**, Plaintiff,

v.

**R. E. LEE MEMORIAL CHURCH**, an unincorporated association, **Defendant.**

No. 67–C–18–L.

United States District Court
W. D. Virginia,
Lynchburg Division.
Sept. 15, 1967.

E. K. Powe, Durham, N. C., and William Rosenberger, Jr., Lynchburg, Va., for plaintiff.

Floyd C. Jennings, Jr., Lynchburg, Va., for defendant.

## MEMORANDUM OF OPINION

BARKSDALE, District Judge.

This is a civil action instituted on June 7, 1967, by plaintiff, Margaret Pickford Egerton, a citizen of North Carolina, against R. E. Lee Memorial Church, an unincorporated association of Lexington, Virginia. It is now before me, upon defendant's motion, supported by the affidavit of the Rector of the Church, to dismiss the action upon the ground that it is "a charitable association, eleemosynary in character, not operated for profit" and as such is entitled to immunity from suit. Oral argument on the motion was heard on August 31, 1967, and briefs have been filed and considered. This court's jurisdiction results from diversity of citizenship, consequently, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, the law of Virginia must be applied. The numerous cases from other jurisdictions cited by plaintiff's counsel, while interesting, are not very helpful in my search for the applicable principles of Virginia law.

From the pleadings, it appears that the defendant is an unincorporated association, a Protestant Episcopal Church of the United States of America, included in the Diocese of Southwestern Virginia. The Church is supported by the offerings and contributions of its members and small endowments and bequests left from time to time by deceased members; that it is eleemosynary in character, a religious society, not operated for profit. The Church is not maintained as a tourist attraction, its maintenance being for the religious use and benefit of its members and other people of the community. However, it is open to the public, and information concerning its historic significance is published and disseminated by the Visitors' Information Center of Lexington. During the daylight hours of June 12, 1965, the plaintiff entered the Church "for the purpose of viewing the sanctuary and the stained glass windows in the Church." While walking from one place to another in the Church, the plaintiff fell down an open stairway leading from the nave of the Church to the floor below, and sustained personal injuries. She alleges negligence in the maintenance of this stairway, and on June 7, 1967, instituted this action for damages for her injuries.

Counsel have cited no officially reported Virginia case involving an action in tort against a church, nor have I been able to find any. Plaintiff's counsel have cited to me the opinion of the trial judge in the case of Rohr v. The City of Richmond and Waddill et als, Trustees of the First Baptist Church of Richmond, tried in the Circuit Court of the City of Richmond and unofficially reported in 20 Va. Law Register 260. Plaintiff alleged injury caused by a defective cellarcap in the sidewalk upon which the church building abutted. The jury returned a verdict for the plaintiff against the church. The church moved to set aside the verdict for several reasons, one of them being that a church cannot be sued in tort. The trial judge set aside the verdict upon other grounds, and as to immunity, said only this:

"It is further insisted by counsel for the First Baptist Church that a church cannot be sued in tort. While it has

been so held in many jurisdictions, it would seem from recent decisions that the doctrine of *total* immunity from liability of religious societies for tort has, upon reason and authority, been rejected. Hordern v. Salvation Army, [199 N.Y. 233, 92 N.E. 626, 32 L.R.A., N.S. 62,] 139 Am.State Rep. 889 (892), and note thereto, especially on page 905. See also Bruce v. Central M. E. Church [147 Mich. 230, 110 N.W. 951, 10 L.R.A.,N.S., 74], 11 Am. & Eng.Ann. Cases 150." (Italics mine)

Although this opinion was rendered in June, 1914, it makes no reference to the case of Hospital of St. Vincent, etc. v. Thompson, 116 Va. 101, 81 S.E. 13, 51 N.L.R.,N.S., 1025, decided on March 12, 1914. This is not surprising, because in the *Rohr* case the trial judge gave no real consideration to the defense of immunity, but only mentioned it as quoted above, and set aside the jury's verdict on other grounds.

It seems that the case of Hospital of St. Vincent, etc. v. Thompson, supra, was the first case involving the question of immunity of a charitable institution for its torts to reach our court of last resort. In his opinion, Judge Keith, President of the court, said:

"In this connection, it may be observed that much that has been said in this opinion was, in this view of the case, unnecessary; to which we reply that the whole subject was discussed in oral argument and in the briefs of counsel; that it is of great interest and of first impression in this state; and we felt therefore that it would be well to consider it in all its bearings."

What the court actually decided in this case was that the plaintiff, Mrs. Thompson, who accompanied a prospective patient to the hospital, a charitable institution,

"was not a beneficiary of the charity, but that she is to be considered as a stranger, and comes within the influence of the principal that a charitable corporation is not exempt from liability for torts against strangers because

it holds its property in trust to be applied to the purposes of charity; a principal which seems to be fully established by courts of the highest authority and in well-considered cases."

Being neither a mere licensee nor a beneficiary, the court held that the hospital was bound to her to use ordinary care to have its premises in a reasonably safe condition. The jury having found such a breach of ordinary care, the verdict in plaintiff's favor was affirmed. However, the court said:

"It may also be conceded, that by the weight of authority, a beneficiary of the charity cannot hold the association responsible for negligent injuries, but the basis upon which the immunity is made to rest differs widely in the adjudicated cases. This court has never heretofore been called upon to consider this subject."

The opinion mentions, or quotes from opinions which mention, several bases for the rule of immunity of charitable institutions for their torts, for instance:

"Some courts say that one accepting the benefits of such a charity exempts his benefactor from liability for the negligent acts of servants. Others assert that nonliability is based on the ground that trust funds created for benevolent purposes should not be diverted therefrom to pay damages arising from torts of servants. Exemption from liability is frequently sanctioned on the ground that public policy encourages the support and maintenance of charitable institutions and protects their funds from the maw of litigation."

Rejecting the trust fund doctrine, Judge Keith said:

"The immunity flowing from the acceptance of the benefits of such a charity, as held by decisions of many courts, rests upon a more logical foundation, and has met with approval of many courts of high standing, and the trend of modern decisions seems to be in that direction."

Counsel for the plaintiff have argued that this court should not "extend" the immunity doctrine to churches, since it appears that in no reported case has the Virginia court applied the immunity doctrine for the benefit of a church or other religious organization. This argument does not appear to me to be sound. I would surmise that the fact that no Virginia case can be found where a tortious action against a church has reached our Supreme Court of Appeals, would indicate that the immunity of churches from such actions is so clearly recognized by the bar that no such actions have been instituted. When the question of immunity of charitable institutions or associations from liability for tort first reached the Supreme Court of Appeals of Virginia in Hospital of St. Vincent, etc. v. Thompson, supra, in his opinion Judge Keith said:

"We are much indebted, in considering this case, to the very learned and able opinion of the Rhode Island court in Basabo v. Salvation Army, supra, from which we have extracted with great freedom."

In the case of Basabo v. Salvation Army, 35 R.I. 22, 85 A. 120, 42 L.R.A., N.S., 1144, the lower court certified to the Supreme Court the question of whether or not the Salvation Army in Providence was immune from a suit against it based on the tort of its servant. It appeared from the certified question that the Salvation Army was chartered for, and was doing business " * * * for the purposes of giving religious entertainments and instructions, * * * and improving the morality of the people * *",, amongst other activities such as distributing charity. Thus, while not a church, it appears that the Salvation Army had quite similar purposes, that is, the giving of religious instructions and improving the morality of the people, and the court said:

"Defendant's counsel contends that under the facts stated * * * defendant is a charitable corporation, as to which no dispute is made by the plaintiff's counsel; and we are of the opinion that the defendant is a charitable corporation in accordance with the definitions so often repeated in the cases that no citation of authority is necessary."

In the *Basabo* case, plaintiff was a pedestrian on the street, a complete stranger to the defendant, when she was fatally injured by the negligence of the defendant's driver. The court held that, if these allegations should be proven, her administrator could recover. However, the court's opinion recognized the doctrine that "one who accepts the benefit either of a public or private charity enters into a relation which exempts his benefactor from the liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in the selection of these servants."

■ So the conclusion seems inescapable to me that, when our Supreme Court of Appeals, in Hospital of St. Vincent De Paul, etc. v. Thompson, supra, declared the Virginia law applicable to the immunity doctrine, it certainly intended to include religious organizations such as churches in those charitable institutions entitled to a limited immunity.

The question of the immunity of charitable institutions from liability for their torts has reached our Court of Appeals in two cases, first, in Ettlinger v. Trustees of Randolph Macon College (4th Cir.), 31 F.2d 869, a student at Randolph Macon Military Academy at Front Royal, Virginia, sued the Trustees who owned and operated the Academy, alleging negligence in the maintenance of the building in which he lived. Holding that the Academy was an eleemosynary institution, the District Court for the Eastern District of Virginia directed a verdict for the defendant on the ground that it was not liable for the negligence alleged. Speaking for the court, Judge Parker said (p. 871):

"Since, therefore, it appears not only that the defendant is an eleemosynary institution, but also that plaintiff was a beneficiary of the charity which it administers, we think there can be

no question that defendant could not be held liable to him for the negligence alleged. 'The courts are practically agreed that a charitable institution is not responsible to those who avail themselves of its benefits for any injuries they may sustain through the negligence or torts of its managers, agents and servants.'.

"\* \* \*

"As stated above, the courts are practically agreed upon the rule of law applicable here; but they are by no means agreed upon the reason for the rule, and this disagreement has given rise to much discussion on the part of the courts themselves and of textwriters and annotators, as will be readily seen by reference to the above notes and authorities. We do not deem it necessary to choose between the conflicting theories or to enter into the rather inviting field of theoretical discussion. Some courts have based the rule upon the theory that the funds of eleemosynary institutions are held in trust for charitable purposes and may not be diverted to the payment of damages on account of wrongs committed by those who administer them. Other courts base it upon the theory that the doctrine respondeat superior, being itself based upon the theory that the principal derives a benefit from the services of the employee or agent for whose negligence he is held liable, has no application where the service of the employee is for the benefit of humanity and not for the gain of the institution which employs him. Others base it upon broad grounds of public policy, holding that, as the institution is engaged in work highly beneficial to the state and to humanity, its funds ought not to be diverted from this important purpose to the payment of private claims for damages. And still others base it upon the theory of an implied agreement on the part of one accepting the benefits of a charity not to hold it liable for injuries which he may receive at the hands of its servants.

"All of these theories have to a greater or less extent entered into the formulation of the rule of law which has now become too well settled to be questioned or overturned. Underlying all of them is the matter of public policy, and it is upon this that the rule may be said finally to rest. The theory that trust funds are not to be taken under execution for the torts of those who administer them rests, in the last analysis, upon considerations of public policy, as does the holding that the rule respondeat superior shall not apply to the agents and servants of a charity. So also, the theory of implied agreement can be sustained only if the agreement be conceived of as implied in law as a matter of public policy. But, resting upon public policy, the rule rests upon a sufficiently firm foundation. A policy of the law which prevents him who accepts the benefit of a charity from suing it for the torts of its agents and servants, and thus taking for his private use the funds which have been given for the benefit of humanity, which shields gifts made to charity from 'the hungry maw of litigation' and conserves them for purposes of the highest importance to the state, carries on its face its own justification, and, without the aid of metaphysical reasoning, commends itself to the wisdom of mankind. It is significant that almost without exception the courts, while giving different reasons for the rule, have not hesitated to apply it where the one seeking to enforce liability against a charitable institution is one who has accepted benefits from it. \* \* \* "

In Bodenheimer v. Confederate Memorial Association (4th Cir.), 68 F.2d 507, plaintiff, who had paid the usual admission fee and viewed the paintings and other exhibits in "Battle Abbey", a building maintained by defendant in Richmond, Virginia, while passing over a concrete walkway on defendant's property leading to the Confederate Soldiers' Home nearby, fell and was injured, which fall she alleged resulted from the defect-

ive condition of the walkway. Upon the evidence the District Court held that the defendant was an eleemosynary or charitable institution, that plaintiff was a "beneficiary" of the charity, and consequently judgment was entered for the defendant. Following the *Ettlinger* case, supra, the Court of Appeals affirmed. As this decision was rendered before Erie v. Tompkins, supra, the Court of Appeals did not feel itself absolutely bound by Virginia decisions. In this connection, Judge Parker observed (p. 510):

> "As there is no conflict between the Virginia decisions and our own decisions with reference to the principles of law governing the case before us, it is not necessary to decide to what extent we are bound to follow the Virginia decisions—whether as strong persuasive authority under the principles of comity, or as binding authority under the rule governing in case of local statutes and property rights. * * "

The case of Hill v. Leigh Memorial Hospital, Inc., 204 Va. 501, 132 S.E.2d 411, seems to be the latest case decided by the Supreme Court of Appeals of Virginia on the question of immunity of charitable institutions from tort liability. In this opinion, Justice Carrico refrains from citation and discussion of cases from other jurisdictions. However, the opinion clearly and comprehensively considers all the Virginia cases on the subject, as well as the two cases from Virginia decided by the Court of Appeals for the Fourth Circuit, Ettlinger v. Trustees, etc., and Bodenheimer v. Confederate Memorial Association, supra. In the *Hill* case, the plaintiff alleged that, while a bed patient in defendant's hospital, she fell and fractured her right arm. She sued the hospital and three nurses, alleging that the hospital was negligent in the breach of its corporate duty to use due care in the selection and retention of its employees, as well as the breach of other corporate duties, in that she had been furnished improper, unsafe and faulty instruments and appliances for her care and use, and specifically that there were no protective siderails on her bed from which she fell and sustained her injury. Plaintiff based her action against the nurses on the allegation that they were negligent in taking care of her. On the hospital's motion, the trial court struck out the other allegations of corporate negligence, and directed a jury trial against the hospital only for its alleged negligence in the selection and retention of employees and against the nurses for their alleged negligence. At the conclusion of plaintiff's case, the trial court granted the defendant's motion to strike the plaintiff's evidence and entered final judgment for the hospital and the nurses. This action of the trial court was affirmed by the Supreme Court.

In his opinion, Justice Carrico noted that judgment for a stranger to the charity had been upheld in Hospital of St. Vincent, etc. v. Thompson, supra, and that recovery against a charitable hospital resulting from the negligence of a nurse who had been negligently selected and retained by the hospital, had been upheld. Norfolk Protestant Hospital v. Plunkett, 162 Va. 151, 173 S.E. 363. This opinion also noted the trend of decisions in other jurisdictions to eliminate, or least to limit, the principle of immunity. Counsel for the plaintiff urge that I should follow this trend. However, I agree with Justice Carrico when he quoted with approval the statement of Justice Snead in Memorial Hospital v. Oakes, Adm'x., 200 Va. 878, 108 S.E.2d 388:

> "If it be considered desirable to abolish such immunity, it would be more appropriate for the General Assembly to act * * * ."

Justice Carrico noted that a bill had been introduced in the General Assembly at its 1962 Session to eliminate, or greatly restrict, the immunity of charitable hospitals from liability for the negligence of their employees, but that this bill had been decisively defeated. To quote from the opinion, the court said:

> "Thus, in refusing to act to provide for recovery in either situation, the General Assembly has tacitly recognized the immunity of such a hospital from liability for corporate negligence,

as well as for the negligence of subordinate employees."

In concluding his discussion of the immunity question, Justice Carrico said (132 S.E.2d p. 415):

"We base our decision, as we did in the Weston case [131 Va. 587, 107 S.E. 785, 23 A.L.R. 907,] in 1921, on the ground of public policy. It cannot be debated that the care of the sick and injured is a public purpose, a matter of public concern. When a portion of the responsibility therefor is borne by the gifts of the philanthropic-minded, so much of the burden is removed from the public. If a portion of those gifts is diverted to the payment of tort claims, without restriction, the spirit and intent of the gifts are, at once, nullified and that much of the burden is again cast upon the public.

"This effect upon the charitable funds, and upon the community, is the same whether the diversion results from the payment of damages for a corporate wrong, or for the negligent act of some subordinate employee of the charitable hospital. As long as those who administer the funds use due care in selecting and retaining those who do the daily work of the charity, the funds should remain inviolate against the claim of a beneficiary.

"We conclude, therefore, that in Virginia a charitable hospital has, as to its patients, an immunity from liability for negligence, unless it has failed to use due care in the selection and retention of its employees."

■ From the foregoing, it is obvious that of paramount importance in the decision of the question here presented to me is the determination of the status of the plaintiff at the time of her injury. In her complaint, she says that she "entered the said Church building, which was then open to the public, for the purpose of viewing the sanctuary and stained glass windows in the Church; * * *" the Church having been held out to her "to be of historic interest and significance" and a "tourist attraction". The

conclusion seems inescapable to me that her desire to view the sanctuary and the stained glass windows in the Church was actuated by one of two motives, (1) a desire to see the windows and sanctuary as matters of artistic or historic interest, or (2) to seek religious inspiration from viewing the windows and sanctuary. In either case, she was neither a "stranger" nor an "invitee", but a beneficiary" of the Church, an eleemosynary and charitable institution. I am satisfied that, as a "beneficiary" of the defendant, a religious, charitable and eleemosynary institution, under the law of Virginia she cannot recover. It follows that an order will be entered granting the defendant's motion to dismiss the complaint.