## CIRCUIT COURT OF THE CITY OF RICHMOND

David E. Moore,
Administrator
of the Estate of
Mary A. Moore

    v.

William Russell Warren

September 21, 1994

Case No. LW-3304-4

BY JUDGE RANDALL G. JOHNSON

This personal injury action is before the court on defendant's plea of charitable immunity. At issue is whether Virginia's doctrine of charitable immunity insulates only the charity itself or extends as well to a volunteer of the charity.

For purposes of defendant's plea, the facts are not in dispute. For several years, the Greater Richmond Chapter of the American Red Cross has operated a transportation program to take elderly, infirm, and disabled persons to and from doctors' offices, hospitals, adult development centers, and other places, as part of the Red Cross' charitable mission. The Red Cross uses volunteers to drive its vehicles. On March 23, 1993, defendant, who was one such volunteer, was transporting plaintiff's decedent to Saint Mary's Hospital in Henrico County when he was involved in a collision. Plaintiff, whose decedent died of causes unrelated to the accident, now brings this action not against the Red Cross, but only against the defendant, who claims immunity.

Plaintiff concedes that Virginia's doctrine of charitable immunity bars suit against the Red Cross. Indeed, in *Gaines v. Young Men's Christian Association*, 32 Va. Cir. 346 (1994), this court noted that "[t]he doctrine of charitable immunity is alive and well in Virginia." It is plaintiff's position, however, that such immunity applies only to the charity and should not be extended to the charity's volunteers. Defendant, on the other hand, argues

that he is cloaked with the immunity of the charity and that plaintiff's case must be dismissed.

The closest our Supreme Court has come to addressing the present issue is *Straley v. Urbanna Chamber of Commerce*, 243 Va. 32, 413 S.E.2d 47 (1992). In that case, the plaintiff sued a chamber of commerce, a committee of the chamber, and the chairman of the committee for personal injuries allegedly resulting from defendants' negligence. The trial court ruled that the chairman "was an agent of the Chamber and is 'cloaked with the charitable immunity afforded to this charitable organization'." 243 Va. at 35. The Supreme Court, however, held that the chamber of commerce itself was not immune, and thus, with respect to the trial court's ruling regarding the committee chairman, said only that "[b]ecause of the view we take of the case, we will assume *without deciding* that" such ruling is correct. *Id.* Consequently, the issue has never been decided by our highest court.

Looking elsewhere, this court is able to locate only one case which actually contains a ruling on the precise issue presented here. In *Wood v. Abell*, 268 Md. 214, 300 A.2d 665 (1973), the Maryland Court of Appeals specifically and unequivocally held:

> In sum, when we bear in mind the historical background of the charitable immunity doctrine as applied in this state, there is no sound reason for extending the cloak to a negligent employee. Recovery against him can in no way do violence to the "trust fund" theory, upon which the doctrine is predicated. Nothing has been presented here to support a conclusion that recovery against Wood would lead to an invasion of trust funds held by the association, if there are any. Thus, the trial judge erred in ruling that the defense of charitable immunity was also available to Wood.

300 A.2d at 679.

Although the court in *Wood* cites *Hill v. President & Trustees of Tualation Academy & Pacific University*, 61 Or. 190, 121 P. 901 (1912), as "the only reported decision we have found which can be said to have addressed itself directly to the issue presented here" (*id.*), my reading of that case, including the following language which is quoted in *Wood*, is that its comments are only dicta, since they were not necessary to the court's decision:

> *Though an action may be maintained against an officer, servant,*
> *or employe[e] of a charitable institution to recover damages* for
> an injury caused by the act or omission of such person, *the*
> *action must be against him* in his individual, and not in his
> corporate, capacity, so that, if a recovery is awarded, it will not
> be discharged from the trust funds . . . . 121 P. at 905.

*Id.* (citation omitted, emphasis by the *Wood* court).

The holding of *Wood*, however, though well-reasoned and logical, is not persuasive. This is so because, as stated in the quoted passage, such holding is based on the "trust fund" theory which underlies the doctrine of charitable immunity as it exists in Maryland and, for that matter, in Oregon as well. *See supra.* According to that doctrine:

> "There is a trust, and there are persons intended to manage it for
> the benefit of those who are to be the objects of the charity. To
> give damages out of a trust fund would not be to apply it to
> those objects whom the author of the fund had in view, but
> would be to divert it to a completely different purpose."

300 A.2d at 678 (*quoting Perry v. House of Refuge*, 63 Md. 20, 27 (1885), which in turn was quoting *Feoffees of Heriot's Hospital v. Ross*, 12 Clark & Fin. 507, 513, 8 Eng. Rep. 1508, 1510 (1846)).

It was because damages assessed against an employee or volunteer of the charity do *not* involve payment out of the "trust" that the court held such persons not to be immune. *Id.* The public trust theory does not apply in Virginia. (The court also notes that subsequent to *Wood*, the Maryland legislature enacted laws extending charitable immunity to employees and volunteers. *See Abramson v. Reiss*, 334 Md. 193, 638 A.2d 743, 750 (1994).)

In *Hospital of St. Vincent v. Thompson*, 116 Va. 101, 81 S.E. 13 (1914), a hospital was sued by a person who was injured while accompanying a sick friend to the hospital for treatment. The issue was whether the doctrine of charitable immunity applied to a suit brought by a "stranger" to the charity. The Court said:

> While it may not be necessary in this case for us to decide, we
> have little hesitation in saying that what is known as the trust
> fund doctrine does not appeal to us as a satisfactory footing
> upon which to rest the immunity of [charitable] associations.
> The trust fund doctrine would establish absolute immunity, if

carried to its logical conclusion, for all torts committed by such associations. It would apply to the omission to perform, or the negligent performance of nonassignable duties, and indeed to negligence in all its conceivable forms.

116 Va. at 107.

Later, in *Weston's Adm'x v. St. Vincent, etc.*, 131 Va. 587, 107 S.E. 785 (1921), the trust fund theory was again rejected, the Court now saying that Virginia's charitable immunity doctrine is based, instead, on public policy, and that in the absence of legislation it is up to the courts to determine what that public policy is:

The prevailing opinion in this country is that in a case like the one under consideration the hospital is not liable, and while different reasons have been assigned for the exemption, we believe that the correct basis of the exemption is public policy . . . .

The question of liability of charitable institutions for the torts of its employees and the extent of that liability, if any, is at last a question of public policy, the determination of which the courts cannot escape in the absence of legislation on the subject.

131 Va. at 609-10.

Based *Thompson* and *Weston's Adm'x*, as well as the public policy considerations involved in the doctrine of charitable immunity, I hold that Virginia's doctrine of charitable immunity does apply to volunteers of the charity.

There are two aspects of public policy which mandate, or at least justify, the existence of charitable immunity. First, the doctrine encourages charities to provide services to their clientele without fear that they will be sued by that clientele if the services are provided negligently. In other words, if charities are thought of as the proverbial "Good Samaritan" who takes to his home a wounded stranger, those charities should not be liable for the negligence of their servants in caring for that stranger. *See Weston's Adm'x, supra*, 131 Va. at 605.

Second, public policy demands that when a person avails himself or herself of the benefits of a charity, he or she assumes the risk of negligent acts committed by the charity's agents. *See Thompson, supra*, 116 Va. at 109. In either case, the policy mandating or justifying immunity for the charity equally mandates or justifies immunity for a volunteer.

With regard to the "Good Samaritan" theory, a charity's volunteers are no less Good Samaritans than the charity itself. Indeed, charities, like corporations, can only act through its employees and volunteers. Just as a charity might be reluctant to provide certain services and benefits if it knows it will be sued if it provides them negligently, prospective volunteers of the charity will be just as reluctant to volunteer their services if they know that they will be personally liable if they perform those volunteer services negligently. And because most charities cannot operate at all without the services of volunteers, public policy must demand the same immunity for volunteers as it does for charities.

Similarly, to the extent a beneficiary of a charity is precluded from suing the charity because he or she is said, by accepting the charity's largesse, to have assumed the risk of negligence, what negligence could have been assumed other than the negligence of an employee or volunteer? Again, it is only through employees and volunteers that a charity acts. If the risk of a charity's negligence is assumed at all, it is necessarily the negligence of an employee or volunteer of the charity that is contemplated. And if that is so, such employee or volunteer must enjoy the same immunity as the charity with regard to such assumption of risk. Thus, when either aspect of public policy is considered, the inescapable conclusion is that an immune charity's volunteers are also immune. Defendant is immune here.