𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

RIVERSIDE AND DAN RIVER COTTON MILLS, INC. V. WAUGH.

March 11, 1915.

1. EVIDENCE—*Damages From Flooding Lands—Other Lands Similarly Situated.*—In an action to recover damages for flooding lands by a dam, it is competent for the defendant to show that the damages were inflicted by a sudden and unusual freshet in the stream, and not by the dam; and, as tending to prove that fact, the defendant may show that other lands on the same stream and similarly situated, but unaffected by the dam, were similarly damaged on the same day by the same freshet. Evidence of this character is not collateral.

2. EVIDENCE—*Collateral Facts—Similarity.*—The similarity required to render the evidence admissible need not be precise in every detail. Substantial similarity, or a similarity in such circumstances or conditions as might supposedly affect the results in question is all that is necessary.

3. EVIDENCE—*Collateral Facts—Tendency to Correct Inference.*—The competency of a collateral fact to be used as the basis of a legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth. While much consideration is due to the discretion of the trial court, such evidence cannot be excluded altogether.

Error to a judgment of the Circuit Court of Pittsylvania county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Malcolm K. Harris* and *William Leigh,* for the plaintiff in error.

*B. M. Custer* and *George T. Rison,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This was an action of trespass on the case brought to recover damages alleged to have resulted to a tract of land in Pittsylvania county by reason of the negligent construction and maintenance of a power house, dam and auxiliary structures (hereinafter, for convenience, referred to merely as the dam) in and across Dan river. There was a judgment for the plaintiff, which is now under review.

The facts, so far as they need to be stated for the purposes of this opinion, are as follows: The Dan River Power and Manufacturing Company, a Virginia corporation, constructed the dam, and afterwards, in the year 1909, that company and the Riverside Cotton Mills, another Virginia corporation, were merged into the Riverside and Dan River Cotton Mills, Inc., the plaintiff in error here, whereupon the dam became, and has remained, the property of the last named corporation. The defendant in error, L. T. Waugh, subsequent to the erection of the dam, purchased a tract of land situate about three-fifths of a mile below, on the north side of Dan river. The damage sought to be recovered in this action resulted to the land at the time of an unusual but not altogether unprecedented freshet in Dan river, occurring in March, 1912. We will hereinafter refer to Mr. Waugh as the plaintiff and to the company now owning the dam as the defendant.

The declaration alleges that on the occasion of the freshet aforesaid, the dam deflected and diverted the water and caused it to rush with great force and violence upon and over the plaintiff's land, thereby washing away the soil and otherwise damaging it to such extent as to utterly destroy

its value. The contention of the plaintiff is, not that all the water in time of such a freshet would, in the absence of the dam, have continued in the natural bed of the stream without overflowing the land, but is, as stated in the brief of plaintiff's counsel, that the dam, by reason of "its shape, combined with the other structures, caused the water to be turned upon the plaintiff's bottoms with greater volume, weight and velocity." The defendant, on the other hand, does not deny that the water did the damage complained of, but contends that the land had recently been plowed and brought to a high state of cultivation, thereby rendering it more liable to damage from overflow; that the land had always been, by reason of its topography, peculiarly subject to overflow in time of high water; that trees and underbrush formerly growing on the said land, and on land between it and the dam, had been cut and removed by the plaintiff and by others not connected with the defendant, thus depriving the land of some of its previous protection against damage by overflow; that the freshet of March, 1912, rose with unusual rapidity and to an extraordinary height; and that these conditions, and not the defendant's dam, caused the damage to the land.

The first assignment of error is to the action of the trial court in refusing to allow the defendant to introduce testimony to show the effect of the same freshet on other lands of similar condition and similar situation on the same stream. Some of these other lands were above and some below the dam. Three witnesses were offered upon this point, with a view, as set out in the bills of exception, "first, to show by the effect of the current of the river upon the lands at the same time, said lands being similarly situated to those of the plaintiff, that the current was unusually swift and that the water was unusually high, and that the flood was unusual and extraordinary; second, to prove that low grounds in a state of high cultivation would

be washed and damaged by the water overflowing them; third, to show that land similarly situated and under similar conditions to the plaintiff's, but so distant therefrom that the structures of the defendant could not be claimed to have affected the current of the river, were overflowed by the same stream, upon the same day, and that these lands were left in a similar condition."

We think this testimony should have been admitted. It tended to support the defendant's theory that the damage to the land would have resulted regardless of the existence of the dam, and was clearly admissible under well settled rules of evidence.

There was testimony (whether in conflict with plaintiff's evidence in any or all respects is not material to the question under consideration) tending to show that the topographic condition of the land on both sides of Dan river for some distance above and below the dam was of the same general character, with river hills or bluffs on the south side, and a depression or valley, called by one of the witnesses "a kind of second bed of the river," on the north side between the north bank and the hills or higher lands lying off still further to the north; that this depression extended through and embraced that part of plaintiff's land which was· most seriously damaged; that prior to the construction of the dam the water always ran down through this depression in time of freshet; that previous freshets had not greatly damaged the land because it was not in a state of cultivation and because it was protected by timber and undergrowth; that after the dam was built the plaintiff and others not connected with the defendant had cut and removed much of the timber and undergrowth on and above the plaintiff's land, thus depriving it of the protection aforesaid; that the plaintiff had put his land in such a state of cultivation as to make it peculiarly liable to wash; that he had cultivated it without

damage for several years after the erection of the dam, and that the freshet of March, 1912, came with unusual rapidity and rose to an unusual height. This is only a partial recital of the evidence which tended to support the defendant's theory, but it is sufficient to show the relevancy of the evidence which the court excluded. The whole case turned upon the effect of the dam on the water that swept down the river in the freshet of March, 1912. Having produced to the jury evidence of the tendency above recited, defendant was offering, in further support of its theory, to show that other land similarly situated, except as to the dam, and in similar condition, on the same stream, was similarly affected on the same day by the same freshet. This evidence was competent and material and should have been admitted. As will appear later, the similarity of situation and condition was sufficiently averred when the evidence was offered.

The general rule governing the admissibility of evidence of the character here under consideration is thus stated by Prof. Wigmore: "The general logical requirement is, then, that when a thing's capacity or tendency to produce an effect of a given sort is to be evidenced by instances of the same effect found attending the same thing elsewhere, these other instances have probative value—*i. e.* are relevant—to show such a tendency or capacity *only if the conditions or circumstances in the other instances are similar to those in the case in hand.*

"But this similarity need not be precise in every detail. It need include only those circumstances or conditions which might conceivably have some influence in affecting the result in question. * * * The similarity that is required is, in short, a similarity in essential circumstances, or, as it is usually expressed, a *substantial similarity, i. e.,* a similarity in *such circumstances or conditions as might*

*supposedly affect the result in question."* 1 Wigmore on Evidence, sec. 442, p. 522.

The same rule is stated in Jones on Evidence, as follows: "When the evidence is capable of being presented as tending to prove the claim of the party, it does not belong to the collateral class and should be received. When the issue was raised *whether a given effect has been produced,* or can be produced by the cause alleged, the courts have frequently admitted evidence apparently collateral when the facts presented such points of similarity as to afford reasonable data for the conclusion: for example, evidence has been received that other property than that in question, similarly situated and not too remote, has been damaged by the escape of smoke, or gas, or dust, or by the flow of water, or by other causes where the circumstances are such as tend to show that the same cause has or has not produced a similar result in the case on trial." 1 Jones Com. on Ev., sec. 164, p. 831.

In the case of *Evans* v. *Keystone Gas Company,* 148 N. Y. 112, 42 N. E. 513, 30 L. R. A. 651, 51 Am. St. Rep. 681, the plaintiff sought to recover damages alleged to have been done to his shade trees by the leakage of gas from the mains of the defendant, and was permitted at the trial to testify as to the condition of trees on the street *beyond his place* after the construction of the gas line. The appellate court, in reviewing the action of the trial court, said: "We have no doubt of the admissibility of the evidence. The issue turned upon the question of whether the escaping gas would account for the injury to the plaintiff's trees, and any evidence showing or tending to show that trees in the immediate vicinity were similarly and simultaneously affected was competent." See, also, *Taylor* v. *Baltimore & Ohio Railroad Co.,* 33 W. Va. 39, 10 S. E. 29, 34; *Shores* v. *Southern Ry. Co.,* 72 S. C. 244, 51 S. E. 700, 702.

The case on trial was one in which the issue had to be determined, to some extent, from circumstances and inferences. The clear weight of the evidence, if not the whole of it, was to the effect that the water during the freshet of March, 1912, would have covered the plaintiff's land if there had been no dam there. Was the effect on the land different from what it would have been without the dam? This was the real issue. The defendant claimed that the effect would have been the same in the absence of the dam. This was its defense. In the nature of the case, direct evidence alone could neither establish the plaintiff's claim on the one hand, nor rebut it on the other. The case in this respect is one of which it may well be said, as Mr. Justice Shiras said in *Holmes* v. *Goldsmith*, 147 U. S. 150, 13 Sup. Ct. 288; 37 L. Ed. 118, "where direct evidence of the fact is wanting, the more the jury can see of the surrounding facts and circumstances the more correct their judgment is likely to be."

In the first volume of Jones' Commentaries on Evidence, sec. 173, page 893, the author, discussing the exception to the general rule against collateral facts as competent evidence, adopts the language of the opinion in *Stevenson* v. *Stuart*, 11 Pa. 307, and says: "The competency of a collateral fact to be used as the basis of a legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough, if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." See, also, *Grubb* v. *Burford*, 98 Va. 553, 558, 37 S. E. 4; *Holmes* v. *Goldsmith, supra.*

We are of opinion, therefore, that the circuit court erred in excluding, as complained of in bills of exception 3, 4 and 6, the testimony of the witnesses Pritchett, Murphy and Fitzgerald.

The admission of the evidence now being considered would not be, as claimed for the plaintiff, in conflict but entirely consistent, with the ruling of this court in *Ellis* v. *Harris*, 32 Gratt. (73 Va.) 688. In that case evidence to show the effect of back water from a dam in a different stream and in a different locality from that involved in the action on trial, was excluded, upon the grounds (1) that the witness offered was not an expert, and (2) that the facts to which he proposed to testify were irrelevant, affecting, as Judge Moncure pointed out, "only certain mill dams and streams in Albemarle, and not the mill dam and stream in Louisa and Orange involved in this case." In the present case the bills of exception show that one of the three witnesses offered by the defendant qualified as an expert, and that all of them possessed the requisite familiarity with the facts and conditions about which they proposed to testify; and those facts and conditions affected lands in the same general locality, on the same stream, of similar situation and in similar condition, and they pertained to the effect upon those lands of the same freshet in which the plaintiff's lands were damaged.

Undoubtedly the discretion of the trial court is entitled to much consideration when evidence of collateral occurrences has been excluded on the ground that it is lacking in the elements of substantial similarity, or that its introduction would lead to distinctly collateral issues. 1 Jones on Evidence, sec. 164; 1 Wigmore on Evidence, sec. 444. In the present case, however, the trial court did not exclude the evidence on these grounds, but in effect decided against the general admissibility of this class of evidence, cutting the defendant off entirely and declining to allow it to introduce any proof on this line, regardless of the question of similarity in the condition and situation of the land. This

we think was reviewable error. See 1 Wigmore on Ev., sec. 16.

Counsel for the plaintiff insist that no evidence was offered and no assurance given that the physical conditions affecting the Waugh land and the other lands in question were the same. It may be conceded that the foundation for the testimony under discussion, and the avowals as to what the defendant expected to show by it, would not appear to an entirely satisfactory degree if we were confined to the report of the evidence in defandant's bill of exception No. 5 (taken to save a different point), which purports to set forth all of the evidence actually taken; but there are three other bills of exceptions, taken for the specific purpose, distinctly dealing with the testimony which was excluded; and in these bills of exception the court certifies the exact purposes for which the evidence was offered. Upon the whole record there can be no doubt that the defendant was proposing to show by this testimony the effect of the freshet of March, 1912, upon lands situated and conditioned in all substantial respects like the plaintiff's land, and that the trial court so understood it.

A further very insistent and rather novel contention on the part of the plaintiff is that, even if the defendant had explicitly offered to show that the physical conditions affecting the Waugh land and the other lands to which the proposed testimony referred were the same, it would have been impossible for defendant to make the offer good and prove that they were the same, because "the very things complained of as causing the injury were absent in one case and present in the other." The statement of this contention carries its own refutation and at the same time emphasizes the materiality of the evidence which was rejected. The effect of the dam was the exact point at issue, and its absence in the one case and its presence in the other, with all other conditions and results the same, was the

precise circumstance that gave the proposed testimony its probative value.

Two other grounds of error were assigned, namely, misdirection of the court to the jury, and refusal to set aside the verdict as contrary to the law and the evidence; but these assignments do not call for any extended discussion. It is sufficient to say that the instructions in question dealt with familiar and well settled principles, and were, we think, correct. If upon another trial the evidence should be substantially the same as on the former, and should also embrace the testimony formerly excluded and dealt with in this opinion, the instructions as given by the court on the former trial will fairly submit the case to the jury. As the case must go back for another trial, we do not express any opinion here as to the weight or sufficiency of the evidence as it appears in the record now before us.

The judgment will be reversed and the cause remanded for a new trial.

*Reversed.*