[No. 28726. Department One. November 7, 1942.]

GEORGE C. CANNEY, JR., *et al., Respondents,* v. SISTERS OF CHARITY OF THE HOUSE OF PROVIDENCE, *Appellant.*[1]

'Reported in 130 P. (2d) 899.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.

*Hugh Miracle* and *Everett O. Butts,* for respondent.

MILLARD, J.—On the theory that the wife's injuries were the proximate result of administrative negligence of defendant, plaintiffs, a marital community, brought this action to recover against defendant (a charitable corporation which operates Providence hospital as a charitable institution) for injuries claimed to have been sustained by plaintiff wife while a paying patient in defendant hospital. Plaintiffs alleged in their complaint that the injuries sustained

". . . were the sole, direct and proximate result of the administrative negligence of the defendants, which consisted solely of the failure of defendants to furnish proper equipment for the purpose of warming the feet of plaintiff under a regulated heat so that the said application of the said instrument would not result in injury such as alleged to have been sustained by the plaintiff."

This appeal is prosecuted by defendant from judgment entered on verdict in the amount of seven hundred fifty dollars in favor of plaintiffs.

All of the assignments of error involve the one question whether the evidence was sufficient to raise an issue of fact justifying submission of the cause to the jury.

Were respondent wife's injuries the proximate result of appellant's alleged administrative negligence in failing "to furnish proper equipment for the purpose of warming the feet" of the patient?

The lone fact that the injuries of which respondents complain were sustained by respondent wife while she was a paying patient in appellant hospital, is not conclusive of the question of liability.

Appellant is a charitable hospital, one which is not conducted for profit, therefore it is not liable for the negligent act of an employee, unless it is established that the hospital failed to exercise ordinary care in the selection or retention of such employee. The fact that compensation is exacted for services rendered does not, of itself, deprive an institution of its charitable status. *Bise v. St. Luke's Hospital,* 181 Wash. 269, 43 P. (2d) 4; *Miller v. Mohr,* 198 Wash. 619, 89 P. (2d) 807.

It is generally held that, since a special nurse is the agent of the patient and is not an employee of the hospital and not subject to its control, the acts of such special nurse do not create liability upon the part of the hospital. See *Ware v. Culp,* 24 Cal. App. (2d) 22, 74 P. (2d) 283 and *Payne v. Santa Barbara Cottage Hospital,* 2 Cal. App. (2d) 270, 37 P. (2d) 1061.

Respondents invoke the rule enunciated in *Miller v. Sisters of St. Francis,* 5 Wn. (2d) 204, 105 P. (2d) 32, that a hospital, even if it is a charitable institution, will be required to respond in damages for injuries proximately resulting from failure to furnish proper equipment.

"This is what is called administrative negligence, as distinct from failure to exercise due care in the selecting of proper physicians and nurses."

The foregoing rule is subject to the qualification that, if the article which it is the duty of the hospital

to supply is obviously unfit for the use for which it was intended, and the trained nurse in charge of a patient used it in violation of the standards of care of nursing practice, the hospital can not be chargeable with any injurious effects therefrom; otherwise, if the defect is not patent. See *Payne v. Santa Barbara Cottage Hospital,* 2 Cal. App. (2d) 270, 37 P. (2d) 1061, and *Ratliffe v. Wesley Hospital,* 135 Kan. 306, 10 P. (2d) 859.

If we apply the law to the facts, which are summarized as follows, it is clear that the trial court was not warranted in submitting the cause to the jury.

██ Pursuant to arrangements made by her husband about two weeks previously, respondent wife entered appellant hospital about 9:30 p. m., November 7, 1940, for an accouchement. Her attending physician arrived at the hospital within a few minutes thereafter. Mrs. Canney was taken into the surgery at ten p. m., for the performance of a caesarean section, after which a blood transfusion furnished by her husband was administered to the patient. The operation was concluded about 11:50 p. m., and the patient was immediately taken to the room which had been assigned to her. The attending physician advised respondent husband prior to the blood transfusion, to employ a special nurse that first night. The hospital obtained a special nurse, of which fact Mr. Canney was promptly informed. The hospital paid the nurse for her services. Respondents later reimbursed the hospital therefor. Mr. Canney testified that, when he visited his wife at one a. m., three nurses were in his wife's room, and that he was informed by one of the nurses that his wife had a special nurse. One of the graduate nurses on general duty in the hospital prepared the bed for the patient by heating it with an electric pad, which was removed when the patient was brought to her room from the

surgery. This nurse assisted the special nurse in placing the patient into the bed and then departed from the room, leaving the special nurse in charge of the patient. From this time until seven a. m., the special nurse was in charge of the patient and made the entries on the hospital chart. Mrs. Canney was given a general anesthetic while in the surgery. She regained consciousness about one a. m., when she was in her room. When the nurse commenced to bathe the patient between the hours of five and six a. m., Mrs. Canney discovered that both her heels were burned.

From twelve midnight, when she was returned from the surgery to her private room, until seven a. m., Mrs. Canney was in charge of a special nurse who had been employed at the request of respondent husband. The special nurse was not called as a witness. What heating appliances, if any, she placed in Mrs. Canney's bed during the period she was in charge of the patient, is not known. There is an absence of evidence of any lack of care upon the part of the hospital in providing competent servants. There is no evidence that the hospital failed to furnish proper appliances. Mrs. Canney's mother testified that between nine-thirty and ten a. m., November 8, 1940, which was approximately five hours subsequent to the time Mrs. Canney discovered the burns on her feet, when she called to see her daughter the latter stated that her feet were burned. The mother saw an ordinary rubber hot water bottle which although it was not hot then, was at her daughter's feet. This witness testified that she could not tell whether any cover was on the bottle; that "it was not wrapped in any towel or anything, if that is what you mean."

Evidence was adduced on behalf of appellant that the hot water bottles supplied by it are standard equipment used in all hospitals; that covers are supplied

for the hot water bottles, which are never used without a cover, and the bottle is always placed between the blankets and never next to the patient.

If the special nurse placed an uncovered hot water bottle to the feet of Mrs. Canney, that failure of the special nurse in not having the bottle covered or in protecting it by blankets is not administrative negligence of the hospital.

If the hot water bottle supplied by appellant was obviously unfit for the use for which it was intended—there is no showing to that effect—and the special nurse who was employed by and was the agent of the respondents used it in violation of the usual standards of nursing practice, appellant can not be charged with resultant injurious effects to respondent wife.

The judgment is reversed and the cause remanded, with direction to dismiss the action.

ROBINSON, C. J., STEINERT, JEFFERS, and DRIVER, JJ., concur.