## Richmond

ROANOKE HOSPITAL ASSOCIATION, TRADING AS ROANOKE MEMORIAL HOSPITAL v. JEANE FRANKLIN HAYES.

December 2, 1963.

Record No. 5655.

Present, All the Justices.

The opinion states the case.

*William B. Poff* (*John H. Thornton, Jr.; Woods, Rogers, Muse & Walker*, on brief), for the plaintiff in error.

*Richard S. Tilley* and *Harvey S. Lutins* (*John H. Kennett, Jr.*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

The plaintiff, Jeane Franklin Hayes, sued Roanoke Hospital Association, trading as Roanoke Memorial Hospital, for damages for personal injuries suffered by her on October 7, 1961, while she was in the defendant's hospital engaged in nursing James Leonard, a patient, by whom she was employed.

Her notice of motion alleged that the defendant had failed "to exercise ordinary and reasonable care and caution to provide Leonard a safe place to be treated," and also failed to exercise the same care and caution to provide the plaintiff with "a safe place to work consistent with nursing her patient." Specifically, she charged that the defendant "had carelessly and negligently permitted one Richard Price to remain as a patient in a hospital room in which Leonard was a patient after it had become evident that Price was irrationally violent and might inflict bodily injuries upon Leonard" and upon plaintiff "who could not abandon Leonard notwithstanding the danger."

The hospital defended on the grounds that it was not guilty of negligence, and moreover that it was a charitable institution and as such was immune from liability to plaintiff, because "she was a recipient of the benefits of" the said institution.

The issue was tried by a jury, which rendered a verdict against the defendant for $23,500.00, upon which the court entered judgment, and the defendant obtained this writ of error.

There are seven assignments of error; but the defendant, in its brief and argument, relies principally on two issues, viz., first, that plaintiff was a beneficiary of a charitable institution; and, second, the alleged failure of the court to properly instruct the jury in Instruction No. 1 as to the measure of duty and care owed by defendant to plaintiff. In addition, defendant argues that Instruction No. 2 was erroneous and prejudicial, and also, that the court should not have admitted the evidence of the witness, Robert W. Rosenberg, as to the behavior of Price subsequent to October 7, 1961.

It is admitted that defendant is a charitable institution. The remaining facts stated in the light of the verdict are these:

Mrs. Hayes, 34 years of age, a licensed practical nurse, was employed in July, 1961, by James Leonard, a patient in defendant's hospital. Leonard, an elderly man, was a helpless invalid, paralyzed on his right side, unable to speak, and quite ill. He occupied a semi-private room, No. 704, on the seventh floor. On August 31, 1961, Richard Price, who had suffered, in an automobile accident, severe injuries, including a broken leg, was admitted to the hospital as a patient and assigned a bed in Room No. 704. Price, 17 years of age, was approximately six feet tall and weighed about one hundred and ninety pounds. At the time of his assignment to Room No. 704, he was restless and violent, and had leather restraints on his arms and legs to protect him from hurting himself. He was fitted with a "traction frame" to support his broken leg, and weights were suspended from it to keep his leg in proper position. On September 29, 1961, he was informed that some of his friends had been killed in the automobile accident. He immediately went "quite completely out of his head, fighting, screaming and trying to get out of bed." Nurses, interns and orderlies of the hospital and friends helped to restrain him. Thereafter, at various times he suddenly became irrational, tried to get out of bed and threatened injury to anyone around him.

Records of the hospital show that on October 1, he was "crying and trying to get out of bed," and had to be "restrained in leather restraints." On the 3, 4, 5 and 6 of October, he was given sedatives to keep him quiet. On October 7, it was noted that he "threatened to throw weights at nurses. Restrained by two nurses, and two orderlies required to hold patient in bed. Patient placed in strait jacket and ankle restraints." The activities of Price caused Leonard to become irritable and nervous.

On October 7, 1961, while Mrs. Hayes was ministering to her

patient with her back to Price, the latter suddenly turned over the night stand between his bed and Leonard's, causing the objects on the stand to fall to the floor. Price raised himself up in bed, reached out and picked up one of the traction weights, and cried out that he "was going to throw it,—that he was going to kill somebody." Mrs. Hayes turned around, and, observing his behavior, turned on a light or bell calling for nurses and other attendants to come and quiet him. She took hold of Price's arm, wrist and shoulder, and pushed him back in bed. In leaning over him to accomplish this, her hand got caught in the traction frame of Price. Three or four persons came into the room, took hold of Price, and succeeded in holding him in bed until a doctor came and administered sedation.

The hand of Mrs. Hayes was painfully and permanently injured. A type of staphylococcus infection set in from a scratch on the index finger of her right hand. She was treated by a physician, for "an infection of the pulp" in that finger; but this not proving successful, she underwent several successive operations between October 7 and November 7, 1961, for the removal of each of the bones in the infected finger and in a part of her hand. This necessitated a considerable period of hospital and medical treatment.

Mrs. Hayes said that prior to her injury, she had told Nurse Peggy Willett, supervisor of the defendant's seventh floor, that somebody was going to get hurt if Price was not removed to a place of isolation, and that his violent and unruly condition was common knowledge to the nurses, orderlies and agents of the hospital.

Dr. Marcellus Johnson, III, a surgeon attending Price, and a witness for the hospital, said that upon the advice and direction of himself and Dr. Rudolph, a psychiatrist, Price was removed from the hospital to a mental institution on October 25, 1961. Dr. Johnson said that he did not think that there was any need to make the transfer until that date.

Over the objection of defendant, Robert W. Rosenberg was permitted to testify as to what he observed in the hospital after October 10, 1961. Rosenberg said that he was admitted to the defendant hospital on October 10, and remained there as a patient until October 27, although the hospital record showed his entry as of October 12. He said that on the day after his admission, he was assigned to a room on the seventh floor; that he was an ambulatory patient and in moving around the seventh floor, he had an opportunity to observe Price; that Price "got very unruly" on several occasions, and "on one particular occasion, it was necessary to have

four or five of the attendants and an intern hold him down in bed;" that he saw him in a wheelchair going up and down the hall and once try to get out of the wheelchair; and that from comments of other persons on the floor, it appeared that there was common knowledge that Price was dangerous. On cross-examination, Rosenberg made no change in his testimony.

Since it is admitted that plaintiff is a charitable organization, we will first consider whether Mrs. Hayes was, under the circumstances, a beneficiary of its charity.

The rule in Virginia is that public policy justifies the immunity of a charitable institution from liability to patients for negligence arising out of the acts of its servants and agents, if due care has been exercised in their selection and retention. *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101, 81 S. E. 13, 18, 51 L. R. A. (N. S.) 1025; *Memorial Hospital* v. *Oakes, Adm'x,* 200 Va. 878, 108 S. E. 2d 388; *Hill* v. *Memorial Hospital, Inc.,* 204 Va. 501, 132 S. E. 2d 411.

Where, however, a plaintiff is not a patient, but is an invitee, or a stranger having no beneficial relation to the charitable institution, recovery for tort may be had if negligence is proved. *Hospital of St. Vincent* v. *Thompson, supra,* 116 Va.; *Walker* v. *Memorial Hospital,* 187 Va. 5, 7, 45 S. E. 2d 898; *Comess* v. *Norfolk General Hospital,* 189 Va. 229, 52 S. E. 2d 125; *Rose* v. *Raleigh Fitkin-Paul Morgan Memorial Hospital, etc.,* 136 N. J. L. 553, 57 A. 2d 29, 31; *Sisters of Charity of Cincinnati* v. *Duvelius,* 123 Ohio St. 52, 173 N. E. 737; 9 Mich. Jur., Hospitals, Asylums and Sanitariums, § 7, pages 475 *et seq.;* 10 Am. Jur., Charities, § 153, pages 702, 703; Hayt, Groeschel & McMullan, Law of Hospital and Nurse, Chap. 1, § 6, page 10.

Cf. *Mautino* v. *Sutter Hospital Association,* 211 Cal. 556, 296 P. 76 and *Canney* v. *Sisters of Charity, etc.,* 15 Wash. 2d 325, 130 P. 2d 899.

In *Hospital of St. Vincent* v. *Thompson, supra,* we held that one who, upon request of a sick person, accompanies him to a charitable hospital for treatment, is an invitee, and the hospital owes him the duty to exercise ordinary care to have its premises in a reasonably safe condition during his visit.

In *Walker* v. *Memorial Hospital, supra,* 187 Va., at page 7, the above case is cited with approval of the foregoing statement.

It is uncontradicted that Mrs. Hayes was a private duty practical nurse, employed in the service of Leonard, and was by him paid

for her services. She was in attendance at a hospital chosen and selected by Leonard. She was not a participant in the hospital's bounty. While it was to her advantage to be allowed to render her services in the hospital, it was equally, if not more, to the advantage of the hospital to have nursing services available. As an employee of the patient, James Leonard, she was an invitee upon the premises of the hospital, and as such the hospital was charged with the duty to exercise ordinary care and prudence to render its premises reasonably safe. *Rose* v. *Raleigh Fitkin-Paul Morgan Memorial Hospital, etc., supra.*

This brings us to the propriety of Instructions Nos. 1 and 2.

Instruction No. 1, so far as pertinent, reads as follows:

"The Court instructs the jury that if you believe by a preponderance of the evidence that the patient Richard Price was acting violently and that an ordinary prudent person under the same or similar circumstances would believe that he would endanger other patients placed in the same room or the patient's private nurse, and the defendant, Roanoke Hospital Association, had knowledge of the danger involved, if any, prior to injury to the plaintiff and failed to take reasonable and proper measures to restrain such violence, which would reasonably safeguard the plaintiff against such violent acts, then the defendant is guilty of negligence."

Defendant contends that it does not properly state the measure of duty and care which the hospital owed plaintiff. It says the court should have given Instruction B, which it requested, setting out that the defendant "was obligated only to exercise that degree of care, skill and diligence in the treatment of Richard Price as is used by hospitals of a similar character in the same or a similar community for a similar type of patient."

We are not here concerned with the duty and care owed to Price in the treatment of him. This is not a malpractice case. No professional expert or medical testimony is involved, or required. No special skill or training is needed to measure the degree of care to be exercised for the safety and protection of the plaintiff and her patient while on the premises of defendant. The negligence here alleged relates to matters or conduct which are reasonably within the knowledge and common sense of laymen. Nor are we concerned with the custom and practice of other hospitals in providing a safe place for their patients, agents and invitees. Moreover, there is no evidence of the custom and practice of other hospitals in that respect before us. Whether or not defendant exercised due care and ordinary

caution to keep its premises in a reasonably safe condition during the period involved was a common sense question which any intelligent layman could answer. *Schoff* v. *State*, 169 N. Y. S. 2d 245, 8 Misc. 2d 940; *Rural Education Association* v. *Anderson*, 37 Tenn. App. Rep. 209, 261 S. W. 2d 151.

The defendant urges us to broaden the immunity extended to a charitable institution. We have heretofore said that the wisdom of exempting a charitable institution from liability in tort even to its beneficiaries was not entirely free from doubt; but we felt that it would be more appropriate for the General Assembly of Virginia to abolish or relax the rule than for this Court to undertake to do so. *Hill* v. *Memorial Hospital, Inc., supra*, 204 Va., at page 504; *Memorial Hospital* v. *Oakes, Adm'x, supra*, 200 Va., at page 889. We decline to accept defendant's request.

We find no error in Instruction No. 1, and we hold that the court did not err in rejecting Instruction B, requested by the defendant, as in conflict with Instruction No. 1.

We come next to Instruction No. 2, which reads as follows:

"The Court instructs the jury that if you believe from the evidence that the plaintiff, Jean Franklin Hayes, was engaged in rescuing her patient, James Leonard, from imminent danger occasioned by the negligence of the defendant, Roanoke Hospital Association, then the plaintiff, Jean Franklin Hayes, is not guilty of any negligence which contributed to the injury to her finger unless she performed the rescue under such circumstances as would make it rash and reckless in the estimation of ordinary prudent persons.

"When confronted with a sudden emergency, the person in position to render aid is not afforded either time or opportunity to measure the chances of success. He must act quickly, if at all, and must be left, in determining the character of the act, to the particular situation with which he is at the moment confronted, viewing the act in the light of common prudence."

Defendant makes no objection to the first paragraph. It recognizes that it is an accurate statement of the so-called rescue doctrine, and generally approved. *Andrews* v. *Appalachian Elec. Power Co.*, 192 Va. 150, 63 S. E. 2d 750. But defendant claims that it was inapplicable here because it did not ask for a contributory negligence instruction. It objects to the second paragraph on the ground that it is an erroneous, ambiguous and deceptive statement of the law, and fails to set out the correct principles as to what constitutes an emergency.

In its grounds of defense, defendant alleged contributory negligence of the plaintiff. In the discussion before the trial judge, preceding the granting of the instructions, it said that it did not rely on contributory negligence. Plaintiff thereupon offered to withdraw the instruction. Counsel for defendant replied: "I don't want to mislead anybody. I am going to argue and I am entitled to argue that her act of sticking her finger in there caused the accident and that the hospital had nothing to do with it."

The trial judge, in his written opinion, stated that Instruction No. 2 "may not have been entirely appropriate after the defendant abandoned his claim of contributory negligence. However, the cross-examination of the plaintiff by the defendant certainly was very strongly directed to show the absence of any reason for the plaintiff to have gotten her fingers or hand on the traction appliance. If the instruction was improper in this case it seems to the Court that it was harmless."

Instruction No. 2 does not fully and correctly define what constitutes a "sudden emergency." It omitted requirements of conditions necessary to constitute such an emergency as might be relied upon to justify the actions of another, and it was inappropriate here. It is difficult, however, to see how it was prejudicial to defendant on the controlling issue whether it was negligent in the performance of the duty it owed to an invitee on its premises. We agree with the trial judge that it was harmless under the circumstances.

The next question is whether the court erred in admitting the testimony of Rosenberg. Defendant objected to it "because it did not relate to the period of time in issue and was irrelevant, immaterial and prejudicial."

It will be remembered that defendant's theory was that it had no notice or knowledge that the conduct and behavior of Price was sufficiently violent and dangerous as to give it reason to foresee he would likely cause injury to anyone. In support, it presented the evidence of several witnesses, including Dr. Johnson.

Here, the testimony of Rosenberg related to the same man, the same illness of that man, the same place, and his same activities within a relatively short period of time after plaintiff suffered the injuries complained of. It lent credibility to the evidence of plaintiff that Price sometimes became suddenly irrational and mentally disturbed; that he threatened injury to persons around him; and that the defendant knew, or should have known, of his unruly and violent activities and realized that unless he was restrained or isolated, he

might injure some person present in the hospital. It was in conflict with the contention of the defendant as to the condition of Price, and that there was no need to remove him from the hospital until October 25th. It tended further to show that defendant was indifferent to the situation created by the activities of Price, and delinquent in not restraining his person, or removing him from the hospital in due time.

"The competency of a collateral fact to be used as the basis of a legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough, if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth." *Riverside Cotton Mills* v. *Waugh*, 117 Va. 386, 392, 84 S. E. 658; *Chesapeake, etc. Ry. Co.* v. *Golladay*, 164 Va. 292, 309, 180 S. E. 400.

"* * * (W)hen there is such logical connection between the fact offered as evidence and the issuable fact that the proof of the former tends to make the latter more probable or improbable, the testimony proposed is relevant, if not too remote." *Chesapeake, etc. Ry. Co.* v. *Golladay, supra,* 164 Va. at page 309. 7 Mich. Jur., Evidence, § 42, page 384.

The discretion of the trial court as to the admissibility of collateral testimony is entitled to much consideration. In the limited sphere of contradiction above recited, the testimony was admissible to assist in a determination founded in truth. Defendant objected to its admission generally with regard to the time involved; but did not request any limitation of its consideration.

This case presents three substantial issues. The first, whether the plaintiff was an invitee is a legal question and it has been correctly decided by the trial judge. The second, whether defendant exercised ordinary and reasonable care for the safety of its invitee was a question of fact, and the jury has resolved it in favor of the plaintiff, and there is ample evidence to support its finding. The third, whether Instruction No. 2 was erroneous and prejudicial to the defendant is a legal question, and we hold that while it was inapplicable under the circumstances, it was not harmful.

We find no reversible error, and the judgment is affirmed.

*Affirmed.*