## NORFOLK AND WESTERN RAILWAY COMPANY

### V.

## ROBERT D. SONNEY

Record No. 860043

November 18, 1988

Present: All the Justices

*William T. Prince (M. Wayne Ringer; Williams, Worrell, Kelly & Greer, P.C.,* on briefs), for appellant.

*W. McMillan Powers (Bernard Miller; Smith & Powers, P.C.; Miller & Bondurant, Ltd.,* on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

Robert D. Sonney, Jr.,[1] a carman employed by Norfolk and Western Railway Company (the railroad), who was injured during the course of his employment on August 13, 1984, brought

---

[1] Sonney is shown as Robert D. Sonney in the motion for judgment and in the transcript, but in documents proffered in evidence he signed his name as Robert D. Sonney, Jr.

this action against the railroad under the Federal Employers' Liability Act (FELA) to recover $1,500,000 in damages. On October 21, 1985, the trial court entered judgment on a jury verdict for that amount. We granted the railroad an appeal.

Having just finished some welding repairs upon a railroad car, Sonney was descending a 10-foot, free-standing, A-shaped metal ladder when a metal strip which was a part of one of eight steps or treads broke, causing him to fall. Sonney testified that, because of the configuration of the steps on the ladder, he could not place all of his foot on a step but was only able to stand on the ball of his foot on the outer strip.

When he fell, Sonney scraped his right side and his right shin and injured his right knee. Although he immediately reported the incident, he was able to work the balance of the day. The following day Sonney saw a doctor designated by the railroad and returned to light duty for a week. Thereafter, upon Sonney's request, he returned to his regular duties. When Sonney indicated, however, that he could not do the work, the railroad sent him to see Dr. Ira M. Cantin, an orthopedic surgeon to whom the railroad previously had referred a number of injured employees. After the examination, Dr. Cantin concluded that Sonney was physically able to return to his full duties as a carman.

Dissatisfied with Dr. Cantin's opinion, Sonney, on his own initiative, consulted Dr. Arthur Wardell, another orthopedic surgeon, 11 days after his injury. Following an examination, Dr. Wardell concluded that Sonney could not perform a carman's duties and recommended arthroscopic surgery on Sonney's knee. That surgery, performed by Dr. Wardell on September 7, 1984, revealed an extensive tear in Sonney's medial meniscus which had resulted from the fall. This tear required Dr. Wardell to remove more than 50 percent of Sonney's medial meniscus. Sonney never returned to work at the railroad; since that time he has established a small bookkeeping and tax business, which he conducts out of his home.

Although we find there was sufficient evidence of negligence for a jury's consideration, we conclude that a number of errors were made during the course of the trial.

## 1. *TRIAL JUDGE'S COMMENTS ON THE EVIDENCE*

The ladder that caused Sonney's fall was not preserved as evidence. On two occasions, after both counsel had completed their examination of Glenn L. Thomson, the general foreman in charge

of the shop where Sonney worked, the trial court asked Thomson, in the jury's presence, a series of questions about whether there was a company policy of preserving or photographing broken equipment which allegedly had caused an accident. Neither counsel had questioned Thomson on these matters.[2] The trial court's questions suggested that Thomson had ordered the destruction of the broken step. Thomson responded by testifying, "I didn't order it destroyed. I just didn't request that it be saved."

Later, the trial judge made the following statements before the jury when he explained why he would not permit the jury to observe a proposed experiment on another ladder, said to be of similar construction to the ladder from which Sonney fell:

THE COURT: [T]he reason I ruled as I did is that there is no evidence that the treads are the same size, dimensions, that they're placed in the same pitch as the other treads are placed. We don't know whether they're further in, further out so that there's more of the tread exposed. We don't know any of those things. You have offered nothing to that. In fact, some of your witnesses have testified that now you have half an A-frame. And this witness doesn't know about it. He says the ladders are the same, it's an A-frame, only the treads have been replaced. And it's in conflict with your own evidence. Denied. Let's move along, sir.

MR. PRINCE: All right. Your Honor, may I —

THE COURT: And for the further reason, again, so the record will be clear on the Court's reason, that the defendant has destroyed the evidence, and now they want to use something else, and I'm just not going to permit it.

Clearly, the trial court commented adversely upon an important part of the railroad's defense; first, by characterizing the proffered evidence as in conflict with the other evidence of the railroad and, second, by stating to the jury that the railroad de-

---

[2] Because the parties failed to object, we express no opinion of the propriety of the court injecting new matter into the case from which the jury may have inferred that the railroad should have had a policy requiring this step to be preserved as evidence and, if there was such a policy, whether Thomson, or some other employee, was derelict in failing to comply with it.

stroyed the evidence. We said in *Jones* v. *LaCrosse*, 180 Va. 406, 410, 23 S.E.2d 142, 144 (1942):

> It is well, too, to remember that in Virginia, it is the duty of the trial judge to interpret and to apply the law; but it is the peculiar duty of the jury to evaluate the evidence. *A judge must not express or indicate, by word or deed, an opinion as to the credibility of a witness or as to the weight or quality of the evidence.* Any question or act of the judge which may have a tendency to indicate his thought or belief with respect to the character of the evidence is improper, and should be avoided. The impartiality of the judge must be preserved in form and in fact.

(Emphasis added.) We quoted the above statement in *Spence* v. *Miller*, 197 Va. 477, 482, 90 S.E.2d 131, 134-35 (1955), where we reversed a judgment for a plaintiff because a trial court stated, while ruling on an objection to further cross-examination, that the defendant had "been rather reluctant to give straightforward answers." *Id.* at 481, 90 S.E.2d at 134. The trial court in *Spence* offered to make some explanation of its use of the word "straightforward" and to tell the jury that it did not mean to reflect on the defendant's credibility. Even though defense counsel refused the offer, contending that a mistrial was the only remedy, we held that the court had a responsibility to attempt to cure its error. *Id.* at 482, 90 S.E.2d at 135.

In the present case, the railroad timely moved for a mistrial. The trial court not only denied the motion for a mistrial but made no effort whatever to attempt to correct the obvious damage done by its patently improper comment that the railroad had destroyed the evidence.

The trial court committed further error by suggesting that Thomson's proposed testimony was in conflict with other evidence of the railroad. This was a matter for the jury, not the trial court, to decide. We find little difference between characterizing a witness' testimony as less than "straightforward," as in *Spence*, and describing a defense witness' testimony as in conflict with the defendant's other evidence in the case.

■ As in *Spence*, we do not decide whether the trial court could have repaired the damage done,[3] but we do decide that both improper comments were prejudicial and the railroad's timely motion for a mistrial should have been sustained. Although this holding is sufficient to require a reversal and a new trial, we will consider other errors in the conduct of the trial because they might recur on retrial.

## 2. EXCLUSION OF EVIDENCE

(a) *Evidence of Bias of Sonney's Medical Witnesses.*

Attorney Bernard Miller represented Sonney. Miller showed that Dr. Cantin, one of the railroad's expert witnesses, and his partners had been treating patients referred to them by the railroad for 20 to 30 years. Miller, in opening and closing argument, as well as in his questions at trial, frequently characterized the medical experts to whom the railroad had referred Sonney for treatment and evaluation as "railroad doctors."

When the railroad sought to show how many of Miller's other clients Dr. Wardell and his partner treated, the trial court sustained Sonney's objection to all such questions on the grounds of relevance. On proffer, out of the presence of the jury, Dr. Wardell estimated that he had treated an average of one or two of Miller's clients who had suffered railroad-related injuries each month for a period of five to six years and that his partner, Dr. Weitzman, had "many patients who are Mr. Miller's clients." The trial court refused to admit any of this evidence.

We have not decided a case on this question. Appellate courts of other states have sustained the admission of evidence of the number of referrals a medical expert received from a litigant's counsel, *see, e.g., Argenta* v. *Shahan*, 135 Mich. App. 477, 484, 354 N.W.2d 796, 800 (1984), *rev'd on other grounds*, 424 Mich. 83, 88, 378 N.W.2d 470, 472 (1985), as well as the refusal to admit such evidence, *see, e.g., Lineberry* v. *Shull*, 695 S.W.2d 132, 136-37 (Mo. App. 1985).

■ In *Henning* v. *Thomas*, 235 Va. 181, 189, 366 S.E.2d 109, 110 (1988), the trial court had refused to permit a defendant to ask a plaintiff's medical witness whether he had entered the case

---

[3] If the trial court felt that its rulings should be explained to counsel at the time, it should have excluded the jury from the courtroom before making the statements.

through a national physicians' medical referral agency for medical malpractice plaintiffs. We reversed and pointed out:

> *The bias of a witness, like prejudice and relationship, is not a collateral matter.* The bias of a witness is always a relevant subject of inquiry when confined to ascertaining previous relationship, feeling and conduct of the witness . . . . [O]n cross-examination great latitude is allowed and . . . the general rule is that *anything tending to show the bias on the part of a witness may be drawn out.*

235 Va. at 188, 366 S.E.2d at 113 (emphasis in original) (quoting *Henson* v. *Commonwealth*, 165 Va. 821, 825-26, 183 S.E. 435, 437 (1936)).

A trial court has discretion to limit the scope of cross-examination which is for the purpose of establishing bias. *See Basham* v. *Terry*, 199 Va. 817, 824, 102 S.E.2d 285, 290 (1958). Given the circumstances of this case, however, we hold the trial court abused its discretion and prejudiced the railroad by refusing to permit it to show the number of injured railroad client referrals Miller made to Sonney's expert witness, Dr. Wardell. *See Sears* v. *Rutishauser*, 102 Ill. 2d 402, 411, 466 N.E.2d 210, 212-13 (1984) (reversing trial court's refusal to permit defendant to show number of referrals to plaintiff's medical expert from plaintiff's counsel, where defendant's medical experts had been vigorously cross-examined by plaintiff's counsel).

### (b) *Evidence Indicating Why One of the Railroad's Medical Experts Examined Sonney Only Once.*

After Sonney had retained counsel and had threatened to file an action against the railroad, Miller, acting on Sonney's behalf, agreed to an examination of Sonney by an orthopedic surgeon of the railroad's choice, but not Dr. Cantin, who previously had examined Sonney for the railroad. Counsel for Sonney pointed out in his opening statement that Dr. Colin W. Hamilton, the orthopedic surgeon the railroad selected, had examined Sonney only once, as contrasted with Sonney's medical expert, Dr. Wardell, who had seen Sonney on a number of occasions. When the railroad sought to prove why it had designated an orthopedic surgeon who had not previously seen Sonney, the trial court excluded such evidence. In his closing argument, counsel for Sonney again emphasized the fact that Dr. Hamilton had examined Sonney only once.

■ Admission of evidence collateral to the issues is subject to the discretion of a trial court. *Roanoke Hospital Association* v. *Hayes*, 204 Va. 703, 711, 133 S.E.2d 559, 565 (1963). Nevertheless, because Sonney's counsel placed emphasis upon Dr. Hamilton's limited contact with Sonney, we hold that it was an abuse of discretion not to permit the railroad to explain why Dr. Hamilton examined Sonney only once.

### (c) *Refusal to Allow Rebuttal Witness to Testify.*

A witness for Sonney testified that, following Sonney's accident, he noticed that the broken portion of the metal strip on the step from which Sonney fell had separated three or four inches. On the other hand, railroad witnesses said the separation was only three-eighths of an inch. Sonney testified that he saw Donald Staub, a railroad foreman, push the separated pieces of metal together after the accident. When the railroad sought to have Staub deny having done so, the trial court excluded his testimony on the ground that Staub had not been listed as a potential witness in the railroad's response to Sonney's interrogatories. Those two interrogatories asked that all persons be listed who had "any knowledge of any facts, events, conditions or circumstances surrounding the accident," or who had inspected "the equipment on which the Plaintiff was injured subsequent to the accident for the purpose of determining its condition at the time of the accident."

■ Staub's rebuttal evidence had nothing to do with any knowledge he may have had of the accident or of any inspection he may have made after the accident; it dealt solely with the serious charge that he had tampered with the physical evidence. Therefore, the railroad was not required to list Staub in its answers to the interrogatories as a condition to having him give this rebuttal testimony.

Accordingly, we conclude that the trial court's refusal to permit the railroad to rebut the charge of tampering made by Sonney was an abuse of its discretion. *See Savage* v. *Nute*, 180 Va. 394, 401, 23 S.E.2d 133, 137 (1942).

## (3)  INSTRUCTIONS

### (a)  *Finding Instruction Not Including Defense*
*of Contributory Negligence.*

The railroad complains that Instruction 6 was a finding instruction which ignored its defense of contributory negligence. It is in the following language:

> The Court instructs the jury it was the continuing duty of the Defendant Railroad in this case to exercise ordinary care to:
>
> 1. Provide the Plaintiff with reasonably safe equipment;
>
> 2. To inspect, maintain, repair and replace all equipment which it either knew or should have known would likely cause injury to one of its employees.
>
> And if you believe from a preponderance of the evidence in this case that the Railroad violated any of the foregoing duties and that such violation, if any, contributed in whole or in part, even the slightest, to the Plaintiff's injuries, then you shall return your verdict for the Plaintiff.

We consistently have held the failure to include a reference to contributory negligence in a finding instruction, even though covered in other instructions, is prejudicial error. *E.g., Mark* v. *Ore*, 187 Va. 146, 155, 45 S.E.2d 894, 898 (1948); *see also Perlin* v. *Chappell*, 198 Va. 861, 866-67, 96 S.E.2d 805, 810 (1957). While the question arises here in the context of an FELA case where comparative negligence is the rule, we think an instruction on contributory negligence is proper if supported by the evidence and cast in terms of how the jury treats such evidence.

### (b) *Instruction that Assumption of Risk Not an Issue.*

The trial court instructed the jury that assumption of risk was not a defense in the case.[4] Nowhere in the pleadings or elsewhere

---

[4] Instruction 13 provided in pertinent part:

In any action brought against any common carrier . . . to recover damages for injuries to . . . any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

in the record do we find any indication that the railroad was invoking that defense.

Instructions similar to this one have been discussed in a number of FELA cases. Some courts have held that it is reversible error to grant such an instruction where neither the pleadings nor the evidence raise the issue. *Ellis v. Union Pacific Ry. Co.*, 148 Neb. 515, 522-23, 27 N.W.2d 921, 925-26 (1947); *Siciliano v. Denver & Rio Grande Western R. Co.*, 12 Utah 2d 183, 186-87, 364 P.2d 413, 415 (1961), *cert. denied*, 368 U.S. 979 (1962). Other courts have held it is error to grant such an instruction but not sufficiently prejudicial to require a reversal. *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 452 (8th Cir. 1984); *Weese v. Chesapeake & O. Ry. Co.*, 570 F.2d 611, 614-15 (6th Cir. 1978); *Heater v. Chesapeake & Ohio Ry. Co.*, 497 F.2d 1243, 1249 (7th Cir.), *cert. denied*, 419 U.S. 1013 (1974); *Almendarez v. Atchison, Topeka & Santa Fe Ry. Co.*, 426 F.2d 1095, 1098 (5th Cir. 1970); *see also Phillips v. Chesapeake & Ohio Ry. Co.*, 475 F.2d 22, 26 (4th Cir. 1973).

We think the better view is that it is reversible error to grant an instruction on assumption of risk in any FELA case, absent an allegation or proof on the question. Accordingly, such an instruction should not be granted on retrial.

Because we are granting a new trial on all issues, we do not decide whether the verdict was excessive. We find no merit in the complaints raised by the remaining assignments of error.

Consequently, we will reverse the trial court's judgment, vacate the jury's verdict, and remand this case for a new trial.

*Reversed and remanded.*