**CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND JAMES CITY COUNTY**

Geraldine Roberts

v.

The Wesley Foundation and
The Peninsula Agency on Aging, Inc.

February 6, 1992

Case No. (Law) 5709

BY JUDGE WILLIAM L. PERSON, JR.

After consideration of the pleadings, evidence, oral arguments, and counsels' briefs, the court finds the following regarding the plaintiff's claim of negligence. This opinion addresses the question of whether the court should grant defendants' motion for summary judgment based upon the doctrine of charitable immunity. This determination rests upon whether the Wesley Foundation and the Peninsula Agency on Aging, Inc., are charitable institutions and correspondingly whether Geraldine Roberts was a beneficiary of the organizations' bounty at the time of her injury?

*Factual Background*

Plaintiff, Geraldine Roberts, brought suit against the Williamsburg United Methodist Church, the Trustees of the Williamsburg United Methodist Church, the Wesley Foundation, and the Peninsula Agency on Aging, Inc., for acts of negligence which caused Roberts to fall and sustain injuries. The Church and its Trustees have been nonsuited by the plaintiff.

On January 5, 1989, Roberts was injured when she slipped and fell on snow and ice that had accumulated on the ramp from a storm the previous day. This accident occurred as she was attempting to enter the Wesley Foundation Social Hall to attend a lunch which she believed was being sponsored by the Peninsula Agency on Aging, Inc.

("PAA"). PAA used the hall in the past to provide nutritional services via lunch programs to individuals aged 60 or older. On the date of the accident, however, PAA did not sponsor the lunch program. Roberts had attended the lunch program twice a week for approximately ten years prior to the fall. Parties have stipulated that for the purpose of this hearing, the issue of whether Roberts mistakenly went to the Wesley Foundation Social Hall on January 5, 1989, is irrelevant.

The plaintiff names as defendants Wesley Foundation as owner, occupier, and tenant of the space and PAA, as tenant. Roberts alleges that she was an invitee, that the defendants breached their duty to protect the public since they did not exercise ordinary care to keep the premises safe or to warn of known danger. Roberts also alleges that the ramp was covered with ice and snow, although the precipitation ceased thirty-six hours earlier, which gave the defendants ample time for snow removal. Roberts further alleges that the defendants negligently constructed and maintained the area about the exit and entrance. In addition, Roberts alleges that the ramp was constructed in violation of the Building Code.

In defense, the defendants, Wesley Foundation and PAA, argue that the claims should be barred by the statute of limitations and, alternatively, that Roberts was a trespasser on January 5, 1989. Among other motions and pleadings, the Wesley Foundation and PAA filed motions to dismiss and grants of summary judgment based upon the doctrine of charitable immunity, arguing that Roberts was a beneficiary of the organizations' charitable purposes when she was injured.

The evidence is uncontroverted. Wesley Foundation offered its charter, Articles of Incorporation, and other business records into evidence. The charter of Wesley Foundation dated May 17, 1956, indicates it was incorporated for charitable, benevolent, and literary purposes, and its Articles of Incorporation indicate that the corporation was established as a non-profit organization. One of the stated purposes of the Wesley Foundation is to minister to the students, university faculty and staff, and to the larger community in which they exist.

Since 1956, Wesley Foundation has been operated as a charitable organization, eleemosynary in character, and not for profit. Wesley Foundation is privately owned, where members of the Board of

Trustees are not salaried, nor does any individual, partnership, or corporation receive any return from operations of the Foundation. Further, Wesley Foundation has been issued a § 501(c)(3) Exemption Recognition Certificate by the Internal Revenue Service, thereby allowing the donations to be considered tax deductible.

Income is derived primarily from contributions through an apportionment of monies received from members of the United Methodist Church throughout the Conference. The bulk of the money allocated is budgeted towards the property maintenance and repair of the seven Wesley Foundation campus buildings. Wesley Foundation occasionally offers its building space for community use in order to provide a neutral space where everyone can gather. Fees charged vary according to what the organizations can contribute. The purpose is basically to cover costs, and whatever monies received would be used for the emergency maintenance and repair fund. Plaintiff has stipulated that one could conclude from the evidence that Wesley Foundation is a charitable organization.

PAA offered its Certificate of Incorporation, which indicates that the organization was established for the purpose of promoting and assuring the highest level of service attainable for every elderly person in Virginia Planning District 21. Under its Articles of Incorporation, the PAA acts as a non-profit corporation in which no capital stock is required or issued, and all property is irrevocably dedicated to charitable purposes. Although PAA is required to direct surplus funds to other charitable purposes, there has not been a surplus of funds during the last several years. Upon liquidation or dissolution of PAA, the assets were to be distributed to its successor corporation organized for similar eleemosynary purposes. Pursuant to the bylaws of PAA, final decisions on policy matters rest with the Board of Directors who, except for the non-voting Director of the PAA, receive no remuneration for their participation. Further, the Internal Revenue Service issued a § 501(c)(3) exemption to PAA on August 14, 1975, which exempts PAA from federal income tax and allows donors the ability to deduct contributions to PAA as provided by 170 of the code. This exemption is still in force.

During 1989, PAA received 56% of its funding from the federal government, 10% from the state of Virginia, seven percent from local governments, three percent from the United Way, and 20% from general and in-kind contributions. Its board members are appointed

by the city counsel, and PAA serves under the authority of the Planning District and was authorized by the Virginia Department of Agricultures.

The parties agree that if the Court finds that the Wesley Foundation and the Peninsula Agency for Aging, Inc., were not charitable institutions or that Roberts had not accepted the charitable bounties of those institutions, charitable immunity would not apply and a reasonable duty of care would have been owed to Roberts. *Taylor v. American National Red Cross*, 6 Va. Cir. 108 (1984). As such, the negligence suit would proceed to trial to determine whether the defendants exercised a reasonable standard of care towards Roberts. Alternatively, if the court finds that charitable immunity applies, summary judgment will be granted and the case would be dismissed.

## *Discussion*

The doctrine of charitable immunity remains a viable defense for charitable organizations in Virginia. Although the wisdom of exempting a charitable institution from liability in tort even to its beneficiaries was not entirely free from doubt, the Supreme Court felt it would be more appropriate for the General Assembly of Virginia to abrogate the rule than for courts to undertake to do so. *Roanoke Hospital Assn. v. Hayes*, 204 Va. 703, 709, 133 S.E.2d 559, 563 (1963); *Hill v. Leigh Memorial Hospital*, 204 Va. 501, 504, 132 S.E.2d 411, 414 (1963); *Memorial Hospital v. Oakes, Adm'x*, 200 Va. 878, 108 S.E.2d 388 (1959). I agree. While many of the previous Virginia Supreme Court decisions primarily involved the charitable immunity of hospitals, charitable immunity has been extended to other non-hospital entities that have been deemed charitable in nature. *See, Thrasher v. Winand*, 239 Va. 338, 389 S.E.2d 699 (1990) (community organization); *Langston v. American Red Cross*, 18 Va. Cir. 451 (1990) (nonprofit organizations such as the Red Cross), *Eldridge v. City of Richmond*, 8 Va. Cir. 317 (1987) (park); *Whitson v. Baldwin and Garden Club of Va.* (order of Circuit Court of Northampton County, Oct. 25, 1989) (garden club); *Edgerton v. R. E. Lee Memorial Church*, 395 F.2d 381 (4th Cir. 1968) (church); *Bodenheimer v. Confederate Memorial Assn.*, 68 F.2d 507 (4th Cir. 1934) (museum); and *Ettlinger v. Trustees of Randolph-Macon College*, 31 F.2d 869 (4th Cir. 1929) (school).

It is a well-settled rule in Virginia that charitable institutions are immune from liability based upon claims of negligence asserted by

those who accept their charitable benefits. *Thrasher v. Winand*, 239 .Va. at 339 (quoting *Weston's Adm'x v. Hospital of St. Vincent of Paul*, 131 Va. 587, 601, 107 S.E. 785, 790 (1921)).

The first issue is whether the Wesley Foundation and the Peninsula Agency on Aging, Inc., are charitable institutions and, as such, entitled to immunity from a suit of negligence. In determining whether an organization is charitable, the courts have traditionally looked at the purposes of the organization, that is, whether or not it is maintained for gain, profit, or advantage. *Danville Community Hospital v. Thompson*, 186 Va. 746, 753, 43 S.E.2d 882, 884 (1947). The charitable nature of an organization is determined by: (1) the powers and purposes as defined in its articles of incorporation; and (2) the manner in which the organization is conducted. *Id.* In determining whether an organization operates in a charitable manner, the Virginia Supreme Court has considered the following factors: (1) whether the officers and directors received compensation; (2) whether any individual, firm, or corporation receives any profit from the operations; (3) whether the corporation paid federal or state income taxes; (4) whether surplus funds were devoted to benevolent and charitable work; and (5) whether the institution was liberal about debt collections. *Purcell v. Mary Washington Hospital Ass'n., Inc.*, 217 Va. 776, 780, 232 S.E.2d 902, 905 (1977); *Radosevic v. Virginia Intermont College*, 633 F. Supp. 1084 (W.D. Va. 1986).

Roberts argues that PAA is not a charitable organization within the parameters of the case law. She argues that since it is seventy-five percent taxpayer funded, its board members are appointed by the city counsel, PAA served under the authority of the Planning District and was authorized by the Virginia Department of Agriculture, PAA should be viewed as a governmental body. The basis of an organization's funding, however, is not the focal point in the inquiry. Previous caselaw has focused solely upon the issue of the organization's purpose and manner of operation to determine its charitable nature. *Danville Community Hospital v. Thompson*, 186 Va. 746, 43 S.E.2d 882 (1947).

The Peninsula Agency on Aging, Inc.'s charter reveals that PAA was organized for the purpose of promoting and assuring the highest level of service attainable for every elderly person in Virginia Planning District 21. Under its Articles of Incorporation, the PAA acts as a non-profit corporation in which no capital stock is required or is-

sued, and all property of PAA is irrevocably dedicated to charitable purposes. Correspondingly, the charter provided by the Wesley Foundation, also, supports the fact that it was formed "solely for benevolent purposes and not organized for profit." The defendants have also shown that no individual, partnership or organization would receive any return from the operations of either organization. Additionally, there is evidence that the members of the Wesley Foundations' Board of Trustees are not salaried, and that the Board of Directors of PAA who, except for the non-voting Director of the PAA, receive no remuneration for their participation as well. Consequently, the Internal Revenue Service has issued its § 501(c)(3) exemption to both the Wesley Foundation and PAA at their inception, which exempts the organizations from federal income tax and allows donors the ability to deduct contributions made as provided by 170 of the Code. These exemptions are still in force. Finally, although a majority of individuals and organizations, who receive services, are unable to pay, both the Wesley Foundation and PAA are liberal in their pursuit of debt collections.

In view of their Articles of Incorporation and the manner in which both organizations are conducted, PAA and Wesley Foundation meet the test for charitable organizations established by *Thompson*. The Court having concluded that each is a charitable organization, the next issue to determine is whether Roberts was a beneficiary of the organizations' charitable bounties.

Charitable immunity does not extend to invitees or strangers having no beneficial relationship to the charitable institution at the time injury occurred. *Straley v. Urbanna Chamber of Commerce*, 243 Va. 32, 413 S.E.2d 47 (1992); *Thrasher v. Winand*, 239 Va. 338, 340, 389 S.E.2d 699, 701 (1990); *Taylor v. American National Red Cross*, 6 Va. Cir. 108 (1984); *Roanoke Hospital Ass'n v. Hayes*, 204 Va. 703, 707, 133 S.E.2d 559, 562 (1963); *Memorial Hospital v. Oakes Adm'x*, 200 Va. 878, 108 S.E.2d 388 (1959); *Hospital of St. Vincent v. Thompson*, 116 Va. 101, 116, 81 S.E. 13, 18 (1914). Also, mere membership in a class eligible to receive future benefits, conditioned upon circumstances which might never occur, is too remote and speculative to be considered. *Thrasher* 239 Va. at 340. A determination of whether or not a plaintiff is the beneficiary of a charitable organization's charitable bounty is a legal question to be decided by the Court. *Roanoke Hospital Ass'n v. Hayes*, 204 Va. 703, 711, 133 S.E.2d 559, 565 (1963).

A paying visitor, who entered a museum to view paintings and other exhibits, became a beneficiary of the charity and did not lose the character of a beneficiary until that person leaves the premises upon which he initially entered for that purpose. *Bodenheimer v. Confederate Memorial Ass'n*, 68 F.2d 507, 509 (4th Cir. 1934). Also, a tourist, who entered a church to view the sanctuary and stained glass windows was a beneficiary of the church's bounty, although she was not a member of the congregation. By visiting the church, she was partaking in a feature of its spiritual function and services. *Edgerton v. R. E. Lee Memorial Church*, 395 F.2d 381 (4th Cir. 1968). The Circuit Court of Norfolk held that a plaintiff, who voluntarily donated blood to the Red Cross was no stranger to the benefits because she and her family were eligible to receive, at no cost, any needed blood or blood products. *Taylor v. American National Red Cross*, 8 Va. Cir. 108 (1984).

Plaintiff has stipulated that one could conclude from the evidence that Wesley Foundation is a charitable organization. As a result of its relationship with PAA as lessor/lessee, however, the plaintiff argues that Roberts was not receiving benefits from either the Wesley Foundation or PAA. Plaintiff's justification is based upon the notion that this second-party beneficiary status in cases of charitable immunity is wholly insupportable by caselaw. Further, Roberts argues that the focus of Wesley Foundation's charitable purpose was the student [at William and Mary] and not the community.

In response to the plaintiff's arguments, first, I do not agree that the notion of second-party beneficiary status in cases of charitable immunity is unsupported by caselaw. This status has been recognized by the Virginia Supreme Court in *Thrasher*, as well as a more recent opinion. *Straley v. Urbanna Chamber of Commerce, supra; Thrasher*, 239 Va. at 341, 389 S.E.2d at 701.

Secondly, this case is distinguishable from a recent Virginia Supreme Court case, where the plaintiff was found to not have received the benefits of the organization's charitable bounty. *Straley v. Urbanna Chamber of Commerce, supra*. In *Straley*, the Court relied upon its holding in *Thrasher*, where the Court looked to the purpose of the charitable organizations to determine whether the individual was a beneficiary. *Straley v. Urbanna Chamber of Commerce, supra*. The Court found that beneficiaries "were only those to whom the charitable organization directed a pecuniary benefit." *Id.* Further,

pecuniary benefits were defined to include any money or goods or services. *Id.*

Plaintiff, a resident of the Williamsburg area, was a long-time participant in the activities sponsored by PAA. In keeping with Wesley Foundation's charitable purposes to minister to residents of the Williamsburg area, it made its facilities available to PAA for use by the area residents. Wesley Foundation charged PAA $6.50 per day, instead of the guideline rate of $45.00 per day. In essence, Wesley Foundation donated its space for PAA's lunch program. At the rate of $6.50, PAA has use of the kitchen facilities as well as a meeting space within the social hall. Certainly the $6.50 did not cover utility or building maintenance costs. Where PAA has been unable to pay the rental fee, it had not been prohibited from using the space. Further PAA would be unable to procure a similar rental agreement within the Williamsburg area to that offered by the Wesley Foundation.

Thus, without the extension of the Wesley Foundation's charitable donation of its kitchen and meeting space, there would not have been any PAA activities in the Williamsburg area. The relationship between the Wesley Foundation and the plaintiff is not so attenuated as to place the plaintiff in a class too remote to benefit. As a result, it cannot be said that Roberts was a stranger to the benefits offered by the Wesley Foundation.

PAA has offered evidence to support its argument that Roberts was a beneficiary of PAA's charitable bounties. PAA was established for the purpose of promoting and assuring the highest level of service attainable for every elderly person in Virginia Planning District 21. PAA rented the space from Wesley Foundation for $6.50 per day in order to provide congregant meals for individuals sixty years of age and older in the Williamsburg area. PAA also provided community information and activities that would be beneficial to individuals who participate in the lunch programs. In addition, PAA provided a meeting space where individuals could come together to socialize.

In 1989, the cost of delivering a meal was $4.87 per participant. PAA is restricted from charging fees for any service or program in which federal dollars are used. At the same time, however, PAA is allowed to offer individuals the opportunity to contribute to the programs. PAA asks for a donation of at least $2.25 per lunch. Although a majority of people who receive services are unable to pay, however, PAA is liberal about debt collection.

Prior to Roberts' fall, she was entering the Wesley Foundation Social Hall in order to secure the benefits of the lunch program provided by PAA. Roberts had attended the lunch program twice a week for approximately ten years. While it is uncertain whether Roberts contributed to the meal costs during that period of time, evidence revealed that she would have been served regardless of whether contributions were made.

Roberts was seeking direct benefits of PAA's charitable bounty. She was not a stranger to the premises where food was being served. She was a member of the class eligible to receive benefits and had been partaking in those benefits for the past ten years.

## Conclusion

In view of their Articles of Incorporation and the manner in which both organizations are conducted, I find that PAA and Wesley Foundation meet the test for charitable organizations. I also find that Mrs. Roberts was not a stranger to the charitable bounties of those organizations but was a beneficiary at the time of her injury.

Accordingly, the defendants' plea of charitable immunity is sustained against both, and the motions for summary judgment are granted.