# CIRCUIT COURT OF THE CITY OF ROANOKE

Carla Elizabeth Carter

v.

Science Museum
of Western Virginia
and Jeff Harmon

October 31, 1997

Case No. CL97000828

BY JUDGE JONATHAN M. APGAR

The Court has reviewed the pleadings in the case, the exhibits introduced, the transcript of the evidence adduced on August 27, 1997, and the memoranda of counsel. The Court is now ready to rule on the Plea of Charitable Immunity.

*Facts*

The Plaintiff has sued both the Science Museum of Western Virginia and Jeff Harmon. The Plaintiff alleges that Jeff Harmon, acting as an agent of the Science Museum, negligently allowed an iguana to bite the Plaintiff during a reptile demonstration at a birthday party being held at the Science Museum. The Science Museum filed a Plea of Charitable Immunity. The facts adduced at a hearing show that the Science Museum was established as a non-stock corporation in 1970 organized to operate exclusively for charitable, scientific, literary, or educational purposes. (Tr. 10, 17.) The Science Museum provides science education to the public through its exhibits, lecture hall, laboratory, planetarium, and off-site work and presentations. (Tr. 7.) The Science Museum operates with a board of trustees, none of whom are compensated. (Tr. 11, 14.) The Science Museum is available for use by the public, including

members of the community who are not able to pay admission. (Tr. 14.) The Science Museum solicits donations and relies on volunteers to fulfill its goals. (Tr. 24, 26.) As another way of meeting its mission and as a result of demand from the community, the Science Museum offers itself as a location to host birthday parties. (Tr. 32, 33.) Birthday planners can choose one of three themes, which include a live animal presentation. (Tr. 29, 30.) During live animal presentations, the Science Museum teaches party attendees about the featured animal. (Tr. 26.) Birthday parties are administered by the Science Museum's education department. (Tr. 27, 28.)

Plaintiff contacted the Science Museum to set up a birthday party for her boyfriend, choosing the live animal presentation. (Tr. 52, 53.) The animal presentation was conducted on behalf of the Science Museum by one Jeff Harmon. (Tr. 36.) It was during this presentation that the Plaintiff was bitten by one of the animals being shown. (Plaintiff's Motion for Judgment, ¶¶ 8-13.)

## Discussion

In Virginia, charitable immunity is a vital doctrine. This doctrine shields charitable institutions from negligence claims brought by plaintiffs who have suffered injury while receiving charitable benefits. *Thrasher v. Winand*, 239 Va. 338 (1990). This immunity does not extend to strangers or invitees who had no beneficial relationship to the charitable institution at the time of injury. The Court is to decide the legal question of whether a plaintiff has received a benefit from a charitable organization. *Roanoke Hospital Ass'n v. Hayes*, 204 Va. 703 (1963).

In this case, there are two questions before the Court. I. Does the Science Museum qualify as a charitable institution under the doctrine of charitable immunity? II. Was the Plaintiff a recipient of the Science Museum's charitable activities at the time of her injury? For charitable immunity to apply, both of these questions must be answered in the affirmative.

I. The Court finds that the Science Museum is a charitable institution for the purposes of the charitable immunity doctrine. The test for determining charitable status is "whether the organization is maintained for gain, profit, or advantage." *Danville Community Hospital v. Thompson*, 186 Va. 746, 753 (1947). This inquiry requires a court to consider the organization's purpose as well as its actual operation. *Purcell v. Mary Washington Hosp. Assoc., Inc.*, 217 Va. 776 (1977), citing *Thompson*.

In this case, the Science Museum's Charter Statement declares its mission "to create interest in and to promote an appreciation of the sciences, the environment, and technology." The Science Museum's Articles of Incorporation state that this non-stock corporation was organized "to operate exclusively for charitable, scientific, literary, or educational purposes." Thus, the Science Museum has made its charitable purpose explicit.

The analysis does not end here, however; it must also be shown that the organization has actually conducted its affairs in a charitable manner. In determining this question, the Supreme Court of Virginia has reviewed the following: (1) whether the officers and directors receive remuneration; (2) whether any individual, firm, or corporation receives any profit from the organization; (3) whether surplus monies are used to further promote charitable aims; and (4) whether the organization is tax exempt under the exception for charitable organizations. *Purcell*, at 780; *Memorial Hosp., Inc. v. Oakes*, 200 Va. 878, 883-84 (1959).

Testimony as to the nature of the Science Museum was provided at the evidentiary hearing by the museum's executive director. Considering the factors above in order, it must first be recognized that the thirty-five members of the Science Museum's Board of Trustees do not receive compensation. Although some of the museum's staff receive salaries, the Science Museum could not operate without its volunteers. As to the second factor, no part of the net earnings of the museum inures to the benefit of any private shareholder or individual. Compensation to any "member, officer, director, trustee, creator, or organizer of the corporation or substantial contributor to it" is limited to a "reasonable allowance for services actually rendered to or for the corporation." Moreover, in the event of dissolution of the corporation, any remaining assets are to be distributed to organizations operated solely for religious, charitable, scientific, literary, or education purposes. Thus, the museum's Articles of Incorporation prohibit any individual, firm, or corporation to profit from the museum. The third factor requires a review of how surplus funds are used. Surpluses, which have historically been slight, are used to further establish the museum's charitable aim of educating the general public. Surpluses have paid for additional exhibits and for the upkeep of the existing facilities. As to the fourth factor, the Science Museum has non-profit status under the tax code.

Other testimony from the evidentiary hearing further illustrates how the Science Museum conducts its affairs in a charitable manner. Fifty percent of the Science Museum's budget consists of donations and contributions of individuals and governmental entities. Although the museum charges admission, its minimal fees do not cover the costs of maintaining the facility.

(Similarly, the fee that Plaintiff paid for a birthday party did not exceed the costs of hosting the event.) The Science Museum waives the cost of admission once a month so that all people can enjoy its exhibits. It admits educational groups such as Head Start to the museum virtually free of charge. The Science Museum's traveling planetarium and outreach presentations further promote science education in the community. Reviewing both the museum's purposes and its actual day-to-day operation, the Court finds that the Science Museum is a charitable entity under the charitable immunity doctrine.

II. Charitable immunity applies only when a plaintiff has a beneficial relationship to the charitable institution at the time the injury occurred. *Straley v. Urbana Chamber of Commerce*, 243 Va. 32 (1992). In *Straley*, the court determined that plaintiff, who was injured while watching a festival parade organized by the chamber of commerce, was only an invitee to whom the defendant owed a duty of reasonable care. Essential to the court's analysis was the fact that plaintiff was not a resident of the town and received none of the pecuniary benefits generated from the festival. *Straley*, at 37. The case before the Court, however, is similar to *Roberts v. Wesley Foundation*, 27 Va. Cir. 121 (1992). *Roberts* involved a plaintiff who fell as she was entering the Wesley Foundation Social Hall to participate in an organization's special lunch program for the elderly. The court held that plaintiff's tort claim was barred by charitable immunity because she was seeking the direct benefits of the charitable organization when she fell. *Roberts*, at 129.

The Court finds that Plaintiff was receiving a direct benefit of the organization's charitable bounty when the injury occurred. Plaintiff was enjoying the private animal presentation, which she selected as part of her boyfriend's birthday party. The party was supervised by the museum's education department, and the purpose of the live reptiles was not to entertain but to educate. The reptiles did not perform tricks; rather the handler discussed the differences between reptiles and amphibians, the reptiles' survival strategies, and the importance of conserving their natural habitat. Plaintiff alleges that her injury occurred during this educational presentation as a result of the reptile handler's negligence. Because Plaintiff was receiving a direct charitable benefit from the museum at the time of the alleged negligence and the resulting injury, her claim is barred by the doctrine of charitable immunity.

The fact that a charitable institution charged an injured plaintiff for its service does not negate a charitable immunity defense. *Bodenheimer v. Confederate Memorial Ass'n*, 68 F.2d 507 (4th Cir. 1934), held that charitable immunity applied where a plaintiff was injured after paying an admission fee

to view the paintings and exhibits at defendant's historical building. Similarly, *Gaines v. Young Men's Christian Ass'n*, 32 Va. Cir. 346 (1994), held that the YMCA was immune from tort liability based upon an injury plaintiff suffered on the basketball court, even though plaintiff's team had paid a fee to participate in the YMCA's league. In the case before the Court, charitable immunity applies even though Plaintiff paid a fee for the educational birthday experience.

Defendant Jeff Harmon is also protected from Plaintiff's negligence claim by the charitable immunity doctrine. *Moore v. Warren*, 250 Va. 421 (1995), held that a volunteer of a charity enjoys charitable immunity when he or she is engaged in the charity's work. Although Defendant Harmon was not strictly a volunteer but a paid part-time employee, the policy reasons upon which *Moore* rests support immunizing Harmon from negligence claims. As *Moore* explained, a charity's activities depend upon the work of its servants, and the Virginia courts have expressed their interest in promoting the worthwhile contributions of charitable institutions to society. To expose the charity's servants to liability while shielding the charitable organization itself would be inconsistent with the charitable immunity doctrine. *Moore*, at 423.

### Holding

For the reasons stated and authority cited, the Defendants' Plea for Charitable Immunity is sustained as to both Defendants, and the Plaintiff's Motion for Judgment is dismissed.